Johnson, J.
 

 I found my opinion in this case upon a single consideration. It was incumbent on the appellant, to show that Evans’s neglecting to comply with his promise to insure, made Farrell & Jones liable. I think it did not, because it appears that Farrell & Jones did not generally hold themselves bound to insure shipments of tobacco, without receiving express instructions to do so. It was, therefore, incumbent upon the executors of Randolph, to communicate such instructions to Farrell & Jones. If they confided in the promise of Evans to give these instructions, it was to their own prejudice. And although the failure of Evans to do so, certainly made him personally liable to them, yet it could not produce a liability in Farrell & Jones. So far as Evans was intrusted to do an act incumbent on the appellant’s testator himself to do, he was the agent of the executors of Randolph, and not of Farrell
 
 &
 
 Jones.
 

 Washington, J.
 

 In this case, it appears, that a letter was written by Farrell & Jones, in August 1770, notifying the executors of Randolph, that they would not make insurance without orders. And it is shown also, that the Randolphs were accustomed to give orders for insurance, whenever they wished to have it made. Whatever, then, may be the general usage of the trade, it will not apply to the present case.
 

 *The deposition of Grymes comes in a very questionable shape. It speaks of things thirty years ago, and in very uncertain language. But admitting for a moment that it applies to this shipment, Evans had not authority to bind his principal, by a promise to insure. He did not promise for them, but promised for himself, that he would write to them to make insurance. This, it is admitted, he did not do. Are Farrell & Jones liable for his personal engagement ?
 

 But the deposition of Grymes is not only uncorroborated, but opposed,
 
 *306
 
 by the other evidence in the cause. If the Randolphs relied upon this supposed engagement of Evans, why did they give their bond in 1772, nine months after the loss, and long after they had notice of the loss, for the balance of the account, without demanding a credit for the lost tobacco ? Three accounts-current were sent them for the years 1772, 1773 and 1774, at several times, and they were requested at each time to examine them, and if they contained any error, to advise Farrell
 
 &
 
 Jones of it. By not doing this, they have given strong evidence that there was no such agreement with Evans, that there was no error in the accounts, and that Mr. Grymes must have been mistaken, or that his deposition refers to some other transaction.
 

 Paterson, J.
 

 The complainant filed a cross-bill to obtain credit for 50 hogsheads of tobacco, which were shipped on board the Planter, the 17th September 1771, by Richard and Peyton Randolph, executors of William Randolph, and consigned to Farrell
 
 &
 
 Jones, merchants, at Bristol, in England. The tobacco was not insured. The Planter foundered at sea, and the tobacco was lost. The question is, who shall sustain the loss ? It is contended, on the part of the representatives of the Randolphs, that Farrell & Jones ought to have insured the tobacco, and, not having done so, they have made themselves liable to the amount, as if it had been insured. To establish this position, the counsel for the complainant has taken the following grounds.
 

 1st. From the nature and usage of the trade between the Virginia planter , . -j and the English merchant, it was *the duty of the latter to have insured the tobacco, and failing so to do, he is responsible as the insurer.
 

 2d. That Thomas Evans, the agent of Farrell & Jones, having promised to have insurance made, it is equivalent to the promise of his principals, Farrell & Jones, and they were responsible for the consequences.
 

 As to the first point, no usage has been proved. And if a usage did exist, this case was taken out of it; as it appears by the whole, course of correspondence, between the parties, that Farrell
 
 &
 
 Jones never did insure tobacco, without orders ; and that the Randolphs gave them orders to effect insurances on tobacco, whenever they thought it expedient or necessary.
 

 Great stress is laid on the contract which, it is stated, was entered into between the Randolphs and Thomas Evans, the agent of Farrell
 
 &
 
 Jones. The contract is founded on the deposition of Philip Grymes. This deposition is certainly open to the strictures which have been made upon it by the counsel on the part of the defendant. It does not appear when, and before whom, the deposition was taken. The deposition is
 
 ex parte,
 
 for neither the defendant nor his attorney had an opportunity to cross-examine the witness. If it was taken at or about the time that the bill was filed, then it is liable to the objections resulting from the frailty and uncertainty of memory, and the misconception or misconstruction of words used' in a general conversation, after a long period of time, exceeding twenty years. Besides, the quantity of tobacco to be insured was not mentioned in the course of the conversation, nor does it appear, that it was at any time afterwards communicated to the agent; and unless the quantity was ascertained, an insurance could not be effected. How this paper, purporting to be a deposition, became annexed to the bill, I have not been able to discover from the pro
 
 *307
 
 ceedings ; and if it be admitted as a piece of evidence in the cause, its credit is much impaired in consequence of the observations already made.
 

 The acts of the agent bind the principal; and supposing Evans to have been the general agent of Farrell *& Jones, it may well be questioned, whether his undertaking to insure, is obligatory upon them ; as it is manifest, from the correspondence between the Randolphs and Farrell
 
 &
 
 Jones, that the latter did not insure tobacco, without express orders for the purpose ; that the Randolphs wrote to them to insure, when they deemed an insurance proper. The fair inference is, that if Evans engaged to have an insurance made in this instance by Farrell
 
 &
 
 Jones, it was a personal contract on his part, which bound himself and no other, and for the performance of which he was responsible in his private character. Orders for insurance were invariably transmitted by the Randolphs to Farrell & Jones, and not communicated to them, through the medium of Evans, unless the present should be considered as an exception. Under such circumstances, the Randolphs, if they relied on the promise of Evans, must look to him individually, and not through to him to Farrell & Jones. By this promise, Evans bound himself, and not the firm.
 

 The house of Farrell
 
 &
 
 Jones transmitted, annually, their accounts to the Randolphs; they did so for the year 1771, after the loss of the tobacco, which it is admitted was not passed to the credit of the Randolphs. The bond given for the balance is dated the 1st January 1772, though, from the letter of the 4th April 1772, it was not, probably, executed until some months after its date. It was made to bear date the 1st January 1772, that it might correspond with the accounts rendered, and carry interest from that period. Farrell & Jones annually rendered regular and stated accounts to the Randolphs of their mutual dealings in the years 1772, 1773 and 1774; and in a letter of the former to the latter, Farrell
 
 &
 
 Jones particularly requested that errors, if any occurred, should be pointed out, that they might be rectified. But the Randolphs made no objections ; they made no mention of the tobacco which was lost, nor did they ever intimate an opinion that Farrell & Jones were liable for its amount. Why this silence, this acquiescence ? The period of the war, we will let pass, without animadversion, as no dealings or communication took place between the parties. Evans died in 1778. In 1780, Hanson was appointed the agent of Farrell
 
 &
 
 Jones. It was never suggested to Hanson, that the Randolphs, *or their representatives, claimed an allowance for the tobacco ; no intention L was manifested to charge Farrell & Jones with it, until an action was commenced on the bond, in 1793 or 1794, when, for the first time, a claim was set up for the tobacco. Mr. Lee has endeavored to account for this silence and acquiescence, but not in a satisfactory manner ; and it is probable, that the Randolphs never thought of making any demand, because they were convinced that they had no right to do so, and that they must sustain the loss themselves, as they had neglected to order Farrell & Jones to make the insurance. It was a loss justly imputable to their own neglect or imprudence ; or if not, then they intended to stand their own insurers.
 

 Farrell & Jones expressed regret, whenever they received no orders to insure; and this flowed from the nature and situation of their accounts and dealings: for as the Randolphs were indebted to the firm, in a large amount,
 
 *308
 
 it became the interest of Farrell & Jones that the tobacco should be insured, as it was property intended to be appropriated towards the payment of the debt due to them. The loss rendered the Randolphs the less able to pay, and increased the risk of Farrell
 
 &
 
 Jones, by diminishing their security. An insurance, therefore, of the property of the debtor, must have been beneficial and satisfactory to the creditor. But this insurance, it seems, the house of Farrell & Jones never thought themselves authorized to make, unless they received immediately from the Randolphs explicit directions for the purpose.
 

 The charge is stale. The claim comes too late ; it is brought forward after a sleep of near 30 years, during which period the original parties and their agents have disappeared and are no more. An acquiescence for such a length of time, and under such circumstances, is too stubborn and inveterate to be surmounted. The claim was put into oblivion ; and there it ought to have remained. A court of equity should not interpose in a case of this kind; and therefore, the decree pronounced by the circuit court ought to be affirmed.
 

 Cushing, J., concurred.
 

 Judgment affirmed.
 
 (a)
 

 (a)
 

 Marshall, Oh. J., did not sit in the cause, having decided it in the court below.