PADDACK *v.* PARDEE.

In giving a construction to an instrument, the whole of it must be examined, and every part of it be taken into consideration; and the situation of the parties and the subject matter of the transaction may also be taken into consideration.

A deed described the premises conveyed as a certain piece or parcel of land situate in out lot No. 10, in the village of Pontiac, to comprise lots Nos. 1 and 9, on the west part of the subdivision of the aforesaid lot No. 10, the same being 112 feet wide on the Mt. Clemens road to the centre of the road leading to the woolen factory, and extending in length to the centre of the Clinton river, with the privilege of fifty square inches of water, to be applied five feet from the surface of the Clinton river, opposite the place of taking the water from the race—to be subject at all times and forever to the woolen factory, and one run of stones for

flouring, after such mill shall be erected—the dam and race to be forever put in repair by said party of the first part—the said two lots being a strip of land off from the south westerly side of said out lot No. 10, and being designated on a plat of the subdivision of said out lot, this day recorded.     It was held,

1. That the plat of the subdivision of lot No. 10 might be referred to for the purpose of giving a construction to the grant.

2. It appearing from the plat that lots 1 and 9 were separated by a strip of land marked "race and alley," and that lot No. 1 lay northerly of it, and between it and the Mt. Clemens road, and lot No. 9 lay southerly of it, and between it and the Clinton river, it was held that the fee in said strip of land did not pass by the deed.

3. That the grantee could not draw the water through an orifice of fifty square inches into a flume or reservoir upon his own premises, and then apply it by a larger discharge than fifty square inches; thereby enabling him, a portion of every twenty four hours, to drive machinery requiring more than fifty square inches of water to propel it.

APPEAL from Oakland Circuit Court in Chancery.

Paddack filed a bill in the circuit court against Pardee, to settle a question of right in regard to a water power, and to quiet his title to certain premises connected with it.     A decree having been made in his favor, Pardee appealed to this court.     The case is fully stated in the opinion of the court.

*Wisner,* for the appellee.

*C. Draper,* for the appellant.

*By the court,* MILES, J.     The complainant being, as he alleges, seized in fee and possessed of a valuable water power, with a dam and race, on the Clinton river, on the N. W. and S. W. quarters of section 28, in town 3 north of range 10 east, and upon which he now has a woolen factory and a grist mill, on the 17th day of February, 1836, executed a conveyance by deed to the grantors of the defendant of a portion of the premises, under the following description: "A certain piece or parcel of land situate in out lot number ten, in the village of Pontiac, being a part of the north-west quarter of section No. 28, town 3 north of range 10 east, viz: to comprise the *lots* Nos. 1 and 9, on the west part of the subdivision of the aforesaid lot No. 10, the same being one hundred and twelve feet wide on the Mt. Clemens road to the centre of the road leading to the woolen factory, and extending in length to the centre of the Clinton river; with the privilege of fifty square inches of wa-

ter, to be applied five feet from the surface of the Clinton river, opposite the place of taking the water from the race, to be subject at all times and forever to the woolen factory and one run of stone for flouring, after such mill shall be erected; the dam and race to be forever put in repair by said party of the first part; the said two *lots* being a strip of land off from the south-westerly side of said out lot No. 10, and being designated on a plat of the subdivision of said out lot this day recorded."

It is alleged in the bill that the race is the property of the complainant, and was not conveyed by him.

· The bill states, that the defendant has made a large excavation on the side of the race and within two feet of the water: that he claims that he has a right to construct a reservoir of such dimensions as he pleases, leading out of the race, without any regard to the restrictions contained in the deed: whereas, the complainant insists that it was the intention of the parties, as plainly expressed in the deed, that the orifice at the race where the water is to be diverted is to be fifty square inches in dimensions, and no more.

The bill further states, that the present excavation is sufficiently large to pass at least *twenty feet of water*, and to divert the whole body of water from the race, and to render the water power entirely useless to the complainant.

The bill prays, that the defendant may be compelled to take the water from the race, if at all, in the manner prescribed by the deed, and to release all claim to the race, except the right of so taking and using the water.

The defendant, in his answer, admits making the excavation, but denies any intention to construct a reservoir, as charged in the bill. He denies that he intends to draw the water from the race through an orifice exceeding fifty square inches; but claims that he has the right of having the water which shall escape through such orifice, flow into a flume of such dimensions and form, and upon his own premises, as *he shall choose;* and that he has the right of applying the water which may so escape to the propelling of machinery to be erected at any distance he may choose from said orifice, or to apply the same immediately at such opening. He denies that the complainant is the owner of the race, but, on the contrary, claims to own the soil over which the

water flows, and the banks and bed of the same, along by and upon the premises owned by him.

A replication was filed, the cause was heard upon pleadings and proofs, and a decree made, that, by the conveyance, defendant was entitled to fifty square inches of water, and no more, by an orifice or race of such dimensions as to admit that quantity, and no more, from the race to the place where it should be applied, subject to the restrictions and limitations in the conveyance named, and that the title to the race was in the complainant.

We are asked to reverse this decree as to the water privilege, because, as is insisted, the defendant is not, by the terms of the conveyance, restricted to carrying the water from the race to the place where it is to be used, in a race of the same dimensions as the orifice at which it is taken, and that he has a right to take the body of water into a flume of larger size, *and then to take it out of such flume as he shall choose.*

Secondly, it is urged that the race is not shown to be the property of the complainant.

The question made by these pleadings, then, is, whether the defendant is entitled to control the use and application of the water after it leaves the race, or whether, by the terms of the grant, he is limited and restricted in such use.

In giving a construction to this instrument for the purpose of ascertaining the intention of the parties, the whole instrument must be examined, and every part taken into consideration. Howell *v.* Richards, 11 East. 643.

In determining the meaning of any particular sentence or provision, we may also take into consideration the situation of the parties, and the subject matter of their transactions, to which the contract relates. Wilson *v.* Troup, 2 Cowen 223. See also Strong *v.* Benedict, 5 Conn. R. 220, and the cases there referred to, to sustain the proposition of Hosmer, Ch. J., that the condition and situation of the parties, and other collateral facts known to them both, may properly be recurred to, to ascertain their mutual intention. In the case of the King *v.* Laindon, 8 T. R. 379, evidence was received to ascertain an independent fact, in order to aid in the construction of an agreement. Also Sumner *v.* Williams, 8 Mason 214.

I propose, then, to apply these principles, and such others as may be

drawn from a few adjudged cases, in attempting a construction of the deed before us.

First, it is well to notice, that the complainant reserved what is called the first right of water, for the woolen factory, and for one run of stones when he should erect a grain mill.

The grant to the defendant is restricted to a certain quantity of water, when there shall be so much over and above what is needed by the complainant for the woolen factory, and also for the mill after it shall have been erected. The complainant's right, in this respect, is ever to remain superior to that of the defendant.

In Sumner et al. v. Foster, 7 Pick. 32, it was held that the owner of a mill, who is entitled to use only the surplus water not required by another mill, is bound to shut his gate when there is not a sufficiency of water for both. In that case, the grant was of water " sufficient for any work except a grist mill or saw mill," to be taken from the flume of the grantor, to be made for the use of a cotton factory, and when there was more water than was sufficient for the cotton factory.

We will next consider whether the complainant is shown to possess the title to the land over which the race is carried, as the result of this inquiry must necessarily influence, to some extent, the construction to be given to the grant of the water.

It is insisted, that the description in the deed of the land conveyed, includes that portion over which the race is carried: and that this description must be confined to the deed, without reference to the plat in evidence.

The objection to referring to the plat was grounded mainly upon an alleged want of evidence of identity. The paper given in evidence purports to be a transcript from the records in the office of the register of deeds; and to be a subdivision of out lot No. 10, by a surveyor into several lots, among which are lots Nos. 1 and 9, the boundaries to which upon the Mt. Clemens road on the north, on the road leading to the woolen factory on the west, and on the Clinton river on the south, correspond with the description in the deed.

By this plat, it appears that the race runs across a part of the width of out lot No. 10, in a north-easterly direction, and parallel, or nearly so, to the river. This piece of ground is laid down as a race and alley, being one chain in width, and bounds the south line of lot No. 1, and

the north line of lot No. 9, in the subdivision.    But it was insisted, on the argument, that the race, or the ground covered by it, is clearly included in the descriptive words in the deed : that lots 1 and 9 extend from the Mt. Clemens road to the centre of the Clinton river.    By this, I understand that such is their extreme bounds in those directions.    It will be observed, that although the width is given, the length is not : and the reference to the plat shows why this was omitted in speaking of the extreme length of both lots.    As there are two lots, there must be a boundary between them somewhere, if only by a line drawn : the plat shows that boundary to be the land left for the race and alley.

There is, besides, the testimony of two witnesses, who are acquainted with the whole lot and its subdivisions, and who together establish the south line of lot No. 1 to be north of, and the north line of lot No. 9 to be south of, the place where the defendant has put in his flume to take the water from the race.

That it is competent to refer to the plat to render certain the description in the deed, is beyond question.    "Where the act of disposal relates to another thing, that thing becomes in a manner part of the disposition, and the standard referred to being certain, the grant by relation thereto becomes certain according to the common maxim, *id certum est, quod certum reddi potest*."    4 Bac. Abr. 524.

The whole of this description taken together, then, shows that lots 1 and 9 consisted of two distinct parcels of land, with the strip of land one chain wide, over which the race passes, lying between them : so that the defendant has by the conveyance acquired no title to the land on which the race is.

The testimony of the witnesses before referred to shows that the excavation in the side of the race is made upon the land of the complainant : that the water must be conducted across his land before it reaches the bounds of lot No. 9, upon which, by the terms of the grant, it must be used.

The complainant, then, granted to the defendant a subordinate right in the use of a portion of the water running in the race, on his own premises.    This would necessarily include a right to the defendant to carry the water across that portion of the complainant's land between the south bank of the race and the north bounds of lot No. 9.

With this preliminary examination we shall be the better enabled to

understand the meaning of the language used in the grant itself. It is of fifty square inches of water, " to be applied five feet from the surface of Clinton river, opposite the place of taking it from the race."

The plain sense of these words would seem to be, that the quantity *taken* is that to be *applied*, and that, although the defendant would have a right to apply it at a distance from or as near to the aperture as the approach of his own premises would allow, still the quantity applied must be the same.

If the grant had been of a given quantity of water, without any words of limitation as to its use or application, the defendant might have some better reason for the claim which he makes; but the quantity taken is to be applied at a particular place: and although the exact spot is not designated, yet it must necessarily be at some point on lot No. 9, between the race and the river, and opposite the place where it is taken.

If this construction is correct, it excludes the idea of drawing the water into a flume or reservoir upon the premises of the defendant, and afterwards applying it by a *larger discharge* than fifty square inches, and thus, perhaps, enabling the defendant, during a portion of every twenty-four hours, to propel machinery of a larger or different character from that which he could move by a direct application of the water.

Some consideration is also due to the fact that the complainant had already some machinery in operation on this race, and contemplated the erection of other mills. This would induce him, as I believe he has, to restrict the defendant to a direct application of the water granted, and at some place upon the lands conveyed in the deed. The defendant purchased with a full knowledge of these circumstances.

On the whole, then, from the conveyance, the relation of the parties, and the nature of the transaction, I think we may safely conclude that it was well understood by the parties, and so expressed in the deed, that the defendant was to have the right to take and use fifty square inches of water, to be applied directly to his machinery by a trunk or race conducting the same from the complainant's race to the place where the same should be so applied, and not otherwise.

Another objection to the decree, is, that the complainant has averred in his bill that he is seized in fee of the whole premises on which his water power is situated, and that he has not proved this fact. This was

unnecessary: the title to any portion of the premises except the race, is not in question. The defendant makes no claim of title to any portion except that; and strangely enough, although he says in his answer that he does not know whether the complainant was or was not seized of the premises when he executed the deed, yet he claims title to the race by virtue of the same conveyance which he disputes in his answer. The title to the land under the race, if at all conveyed to the defendant, is in the same deed, and included in the same description, with that of the two lots 1 and 9. In fact, the defendant insists that description includes the race.

It is idle, then, for the defendant to deny a title under which he himself claims.

In this view of the whole case, the decree must be affirmed.

*Decree affirmed.*