## Abiel T. Vary v. John Shea and another.

*Mistake: Contracts: Evidence: Deliberation.* The evidence of mistake in a written contract, on which the court should act in giving relief, ought to be so clear as to establish the fact beyond cavil; and especially when the party setting up the mistake has had the contract prepared by his own professional adviser, and apparently with care and deliberation.

*Contracts: Construction.* In construing a contract all its parts must be examined, and effect given to every word and phrase if practicable; and where one clause of a contract provides expressly for complainant's paying over to defendant certain surplus moneys mentioned therein, a construction of another clause not clearly demanding it, such as to authorize the complainant to retain in his own hands the major part of that surplus, is not admissible.

*Contracts: Construction: Agreement to discharge mortgage: "Expense."* A provision in a contract that a party shall discharge his mortgage "at the expense" of the mortgagor, imports, in the absence of explanation, that he is to do it on being reimbursed the expense attending the drawing, execution and recording of the discharge, and not that he is to do it only on being paid the amount called for by the mortgage, as well as reimbursed such expense.

*Equity jurisprudence: Affirmative relief: Cross-bill.* Affirmative relief will not be granted to defendants in a chancery cause, in the absence of any cross-bill.

*Heard April 11.    Decided April 24.*

Appeal in Chancery from Calhoun Circuit.

*W. D. Adams*, for complainant.

*James H. Campbell*, for defendants.

A court of equity, in order to ascertain and carry out the intention of parties to a particular transaction, will look at their situation and the whole transaction between them: *Frink v. Cole, 10 Ill., 339.*

To enable a court of equity, upon the ground of mistake, to reform a written contract, the mistake must be proved to be the mistake of both parties, so that by correcting the writing as requested, the court will make it express the contract designed to be entered into by both.

Where there has been no fraud or surprise to put the applicant for relief on his guard, it must appear that the mistake was not the consequence of his own want of recollection from inattention or of his own carelessness: *Deman v. Providence, etc., R. R. Co., 5 R. I., 130; Wood v. Patterson, 4 Md. Ch., 335.*

Chancery will exercise the power of reforming a written contract, sparingly and with great caution and only on the clearest proof of the intention of the parties and of the accident or mistake upon which the jurisdiction is invoked: *Reese v. Wyman, 9 Ga., 430; Lockhart v. Cameron, 29 Ala., 355; Ligon v. Rogers, 12 Ga., 281; Hunter v. Bilzen, 30 Ill., 288; Cleary v. Babcock, 41 Ill., 271; Davidson v. Geer, 3 Sneed (Tenn.), 384; Linn v. Barkey, 7 Ind., 69; Hall v. Clagett, 2 Md. Ch., 151; Leitensdorfer v. Delphy, 15 Mo., 160; Wemple v. Stewart, 22 Barb., 154; N. Y. Ice Co. v. N. W., etc., Ins. Co., 31 Barb., 72; City R. R. Co. v. Veeder, 17 Ohio, 385; Shirely v. Welch, 2 Oreg., 288; Bailey v. Bailey, 8 Humph., 230; Lake v. Meechan, 13 Wis., 355; Fowler v. Adams, 13 Wis., 458; Miner v. Hess, 47 Ill., 170; Lyman v. United States Ins. Co., 2 Johns. Ch., 630; Shay v. Pettes, 35 Ill., 360; Adams v. Robertson, 37 Ill., 45; Triplett v. Gill, 7 J. J. Marsh., 432; Watkins v. Storkett, 6 Har. & J., 435; Goldsborough v. Ringgold, 1 Md. Ch., 239; National Ins. Co. v. Crane, 16 Md., 260; Harrington v. Harrington, 3 Miss., 701; Lyman v. U. S. Ins. Co., 17 Johns., 273; Pennell v. Wilson, 2 Abb. Pr. N. S., 666; 2 Robt., 505; Broadwell v. Broadwell, 6 Ill., 599.*

To the same effect: *Tripp v. Hasceig, 20 Mich., 263; Case v. Peters, 20 Mich., 298.*

The mistake of one party not enough, must have been mutual: *Mills v. Lewis, 55 Barb., 179; 37 How. (N. Y.) Pr., 418; Larier v. Wyman, 5 Robt., 147; Penell v. Wilson, 2 Id., 505; 2 Abb. Pr. N. S., 466; Brainard v. Arnold, 27 Conn., 617;*

*Nevins v. Dunlap, 33 N. Y., 676; Briose v. Pacific, etc., Co., 4 Daly, 246; Nelson v. Davis, 40 Ind., 366.*

It is settled that equity will not relieve against a mistake where there is no element of fraud, imposition, undue influence, imbecility of mind, or the like, inferrible from the transaction: *Gwynn v. Hamilton, 29 Ala., 233; Juzan v. Toulmin, 9 Ala., 662; Campbell v. Carter, 14 Ill., 286; Gordere v. Downing, 18 Ill., 492; Atlantic Fire, etc., Ins. Co. v. Wilson, 5 R. I., 479; Dow v. Kerr, Spears (S. C.) Ch., 413.*

Mistake must be conclusively proved: *Kennedy v. Umbaugh, Wright (Ohio), 327; Gray v. Woods, 4 Blackf., (Ind.), 432; U. S. v. Munroe, 5 Mass., 572; Griswold v. Smith, 10 Vt., 452; Lyman v. Little, 15 Vt., 576; Preston v. Whitcomb, 17 Vt., 183; Cleveland v. Burton, 11 Vt., 138; Miner v. Hess, 47 Ill., 170;* beyond a reasonable doubt, not merely by preponderance of evidence: *Stockbridge v. Hudson, etc., 102 Mass., 45.*

Both the original intent and the fact of mistake must be established beyond a reasonable doubt, in order to entitle the parties to relief in equity: *Newton v. Holley, 6 Wis., 592; Coffing v. Taylor, 16 Ill., 457;* see also *Arnold v. Fowler, 44 Ala., 167; Picton v. Graham, 2 Disau. (S. C.), 592; Lamb v. Harris, 8 Ga., 546; Emmons v. Stahlnecker, 11 Pa. St., 366; Salmon Falls, etc., Co. v. Portsmouth Co., 46 N. H., 249; Broadman v. Davidson, 7 Abb. Pr. N. S., 439; Edmond's Appeal, 59 Pa. St., 220; Arnold v. Fowler, 44 Ala., 167; Goltra v. Sanasack, 53 Ill., 456; Bunse v. Agee, 47 Mo., 270; Harter v. Christoph, 32 Wis., 248; Heavenridge v. Mondy, 49 Ind., 434; Rufner v. McConnell, 17 Ill., 212.*

COOLEY, CH. J:

The purpose of this suit is to obtain the reformation of a contract into which it is alleged an error has crept through mistake.

The contract bears date April 5, 1872. To an understanding of the alleged mistake it will be necessary to state the facts respecting which the parties were then in negotiation.

The defendant John Shea was the owner of three parcels of land in Calhoun county, the value of which is estimated at from twelve to fourteen thousand dollars, and which were encumbered to the amount of about eleven thousand dollars by mortgages, known as the Reed mortgage,

the Stringer mortgage, the William Vary mortgage, the Miller mortgage and the A. T. Vary mortgage. All these mortgages except the Stringer mortgage were then owned or controlled by Abiel T. Vary, the complainant. Miller had also an execution levy on the lands for about four hundred and fifty dollars, which was controlled by the complainant, and on one parcel there was due to the state three hundred and sixty dollars. In this condition of affairs the complainant appears to have been desirous of realizing on the securities he owned or controlled, and defendant John Shea was also desirous of selling a portion of the land to obtain means of payment. In the preceding December, Shea had made a contract with one Bly by which he bargained to convey to Bly one parcel of the land for the price of eight thousand dollars. But it was made a part of the agreement that Shea within forty days should procure the Stringer mortgage, on which something like twenty-nine hundred dollars was owing, to be discharged. This discharge Shea failed to obtain, and the contract fell to the ground in consequence. Had it been carried out, the eight thousand dollars was to have been paid to complainant to apply on the incumbrances owned or controlled by him.

The steps leading to further negotiations between the parties to this suit are not very fully explained, but it will be sufficient to state, that previous to April 5, 1872, it had been ascertained that one Rulifson would loan to Shea four thousand dollars or thereabouts, and take security therefor on the lands not bargained to Bly, provided the incumbrances were released and the amount owing to the state paid. This sum would enable Shea to pay off the Stringer mortgage and leave a surplus, the amount of which was somewhat uncertain inasmuch as the exact amount required to pay off the Stringer mortgage was not known. It seems to have been supposed that he would submit to some discount in order to obtain his money. The eight thousand dollars which Bly was to pay for the land bargained for by him would fall short a few hundred dollars of paying all the demands owned or controlled by complainant.

VARY *v.* SHEA.

Two interviews took place between the parties April 5th, in the course of which complainant was in consultation with his counsel, and the interviews led to the drawing up of a contract in the office of the counsel. This contract when drawn up Shea refused to sign, and for the time being the negotiations fell through. As it seems to be agreed on all hands that this draft was in accordance with complainant's desires, and that he urged upon Shea its execution, it is given in full here, and will aid, we think, in the determination of the question whether a mistake was afterwards made or not.

"This agreement, made and entered into this fifth day of April, A. D. 1872, by and between Abiel T. Vary, of the township of Marshall, county of Calhoun, and state of Michigan, of the one part, and John Shea and Frances E. Shea, his wife, of the same place, of the other part, witnesseth, that whereas said John Shea and Frances E. Shea have this day made and executed under their hands and seals a certain indenture of mortgage to one Harmon D. Rulifson on the following described lands, situate in the county of Calhoun, and state of Michigan, described as follows, to-wit: the northwest quarter of the southwest quarter and the southwest quarter of the southwest quarter of section twenty-nine and the northwest fractional quarter of the northwest quarter, north of the Kalamazoo river, of section thirty-two, all being in township two south of range six west, together forming one parcel, and containing eighty-four and twenty-seven one-hundredths acres of land more or less, which said mortgage is given to secure the payment to said Harmon D. Rulifson by said John Shea and Frances E. Shea of the sum of four thousand and thirty-six dollars and fifty cents at the expiration of three years from the date thereof, with interest at the rate of ten per cent. per annum, payable semi-annually until said principal sum be paid : *Provided always,* That any part of said principal sum may be paid at any time before due in sums not less than twenty-five dollars at any one time; all sums, both prin-

cipal and interest, to be paid at the residence of said
Abiel T. Vary, in the town of Marshall aforesaid; and
whereas, also, said John Shea and Frances E. Shea have
also assigned this day by an instrument under their hands
and seals to said Abiel T. Vary the certificate number 644
of sale of university land, bearing date the 4th day of Jan-
uary, A. D. 1851, issued by the commissioner of the state
land office of the state of Michigan;

"Now, therefore, in consideration of the premises, the
said Abiel T. Vary doth covenant and agree, to and with the
said John Shea and Frances E. Shea, that he will, on the best
and most advantageous terms, pay and satisfy and cause to
be discharged of record a certain indenture of mortgage,
bearing date on or about the 3d day of November, A. D.
1866, made and executed by said John Shea and Frances
E. Shea to one William Stringer, and recorded in the office
of the register of deeds for the said county of Calhoun, on
book LL of mortgages, on page 741, and that in case the
amount of said money paid for the discharge of said Stringer
mortgage, including expenses, shall be less than said sum of
four thousand and thirty-six dollars and fifty cents, he will
endorse or cause to be endorsed as paid upon said Rulifson
mortgage the surplus thereof to the amount of thirty-six
dollars and fifty cents, and will pay to said John Shea and
Frances E. Shea the balance of said sum of four thousand
and thirty-six dollars and fifty cents, if any, after deduct-
ing such amount so paid for the discharge of said Stringer
mortgage and necessary expenses, and the sum of three
hundred and sixty dollars, being the amount to be paid to
the state of Michigan on said certificate, which said sum of
three hundred and sixty dollars is due the said state and
was included in said mortgage to secure the payment thereof
to said state of Michigan, and the amount so endorsed on
said mortgage in cash; and also that so soon as said Rulif-
son mortgage shall be fully paid and satisfied, he will, by a
sufficient instrument in writing, under his hand and seal,
duly executed, reassign, transfer and set over to said John

Shea and Frances E. Shea the said certificate number 644 of sale of university land, 'and that he will not, so long · as said John Shea and Frances E. Shea perform the conditions of said Rulifson mortgage, assign said certificate to any other person or persons, and that said John Shea and Frances E. Shea may, so long as they shall perform the conditions of said Rulifson mortgage, retain possession of and occupy the land mentioned in said certificate.

"And in case said John Shea and Frances E. Shea shall fail to perform the conditions of said Rulifson mortgage, then said certificate shall be sold in the manner provided by law for the foreclosure of mortgages and the proceeds thereof applied to the payment of said Rulifson mortgage.

"It is further agreed that in case said John Shea and Frances E. Shea shall faithfully and in due season pay to the proper officer all interest due and to become due on said certificate, in that case the interest on the sum of three hundred and sixty dollars, parcel of said sum of four thousand and thirty-six dollars and fifty cents, secured by said Rulifson mortgage, as aforesaid, shall be reckoned at seven per cent. per annum instead of ten per cent., as in said mortgage expressed."

This is the contract which complainant desired should be executed, and with the usual attestation clause added, it was drawn up under his direction for signatures of the parties, and its execution by defendants urged. If we direct our attention to the provision contained in it for the disposition of the surplus that would remain of the moneys to be obtained by means of the Rulifson mortgage, after the Stringer mortgage should be paid off, and the· amount owing to the state satisfied, it will be manifest that it very plainly and distinctly provides that such surplus shall be paid to the defendants. It is important to bear this in mind, since the mistake which it is claimed crept into the contract relates exclusively to the disposition of this surplus.

Three days later further interviews were had between the parties,· complainant seeking the first at an unusual hour in

the morning, and exhibiting, as the evidence shows, considerable anxiety to have an understanding of some kind arrived at. If he supposed his securities perfectly available for the sums due upon them,. this anxiety would require some explanation, especially as the inferences from the record are that he was not in want of moneys for other uses than investment at interest. On this day, as during the preceding interviews, he was in constant communication with his professional adviser, and had with him the draft of contract above given, which the Sheas still refused to sign, as not sufficiently favorable to their interests. After a good deal of negotiation a clause was added to the draft under complainant's direction, which was supposed to meet their views, and which was as here given, omitting the words included in brackets.

"It is further agreed that said Abiel T. Vary shall discharge, or cause to be discharged, from said lands, and from the lands recently sold by said John Shea and Frances E. Shea to one Caleb C. Bly, all other mortgages, judgments or attachments, at the expense [as to fees of the register of Calhoun county] of John Shea aforesaid.

"The provisions of these presents are declared binding on the respective heirs, executors, administrators and assigns of each of the respective parties hereto."

We are given to understand by complainant's evidence that the proposed contract with this addition was understood by him at the time to be satisfactory to the Sheas, and that the change effected in it by the addition had overcome their objections as he then supposed. At the same time he insists that under the contract as thus amended he would be entitled to exact from the Sheas the whole amount of all the incumbrances, and that his undertaking to discharge them all at "the expense" of John Shea only obligated him to do so on complete payment being received. And as the Rulifson moneys would be in his hands, his construction of the paper is, that he would have had a right to satisfy the balance that should remain on the incumbrances

he controlled after the Bly moneys should be applied, from the surplus remaining of the Rulifson moneys after paying off Stringer and the state.

Now as the Sheas had refused to sign the contract as first drawn, and it is manifest from all the evidence that they had been bargaining for concessions and that complainant supposed he had changed the proposed contract in their interest, it is pertinent to inquire in what particular they were bettered by this change. But the slightest consideration of this additional provision will convince one that, if we accept the construction of complainant, the addition effected no important change in the paper. What did it bind complainant to do? Merely this, as he claims: to cause the incumbrances he owned or controlled to be discharged on receiving the amount thereof and the expenses attending the discharge. But this he would have been obliged to do without any such written undertaking, and there is not a man of sense in the community who does not understand that he has a legal right to require a discharge of his mortgages when he satisfies them. Indeed, the statute imposes a penalty on the owner of a mortgage who refuses to discharge it on demand when satisfaction is made, and permits the mortgagor to recover the penalty for his own use.—*Comp. L.*, § *4246*. It is, therefore, to our minds incredible that the Sheas should have been for two days bargaining for a right which they must have known they possessed already, or that complainant should have supposed he was yielding any thing in conceding what he must have been perfectly aware he could not refuse.

Defendants, on the other hand, claim that what they were bargaining for was a discharge of the incumbrances controlled by complainant, without further payment after the Bly moneys were applied. In this view they had something tangible and important to negotiate for, and they were satisfied with the contract as amended, except that as the matter of expense in causing the incumbrances to be discharged was in no manner restricted, they feared they might be sub-

jected to needless charges in that regard. They therefore insisted on the interlineation of the words "as to fees of the register of Calhoun county," in order that it might be definitely understood what "expense" they could be put to, these words, however, in no manner affecting their right to demand from complainant a discharge of the incumbrances he controlled, without further payment after the Bly moneys were applied; that right being complete under the contract as it stood before these words were interlined. Complainant denies this, and insists that by the interlineation of these words, if they are allowed to have effect as they stand, his right to apply from the Rulifson moneys sufficient to satisfy the incumbrances in his hands is taken away; and this he avers was not the understanding at the time, and it was through mistake and inadvertence that an interlineation was so made as to give the contract that effect.

To account for making the Rulifson mortgage larger than was necessary to obtain moneys sufficient to pay off all the claims, defendants introduce evidence to show that a part of the inducement on their part to enter into the contract was the obtaining money for their own use in building on the land they would retain. They also suggest reasons why complainant was led to assent to a discharge of the incumbrances without receiving full satisfaction, and countervailing reasons are suggested in his behalf. We need not enter upon an examination of these reasons, though it is worthy of notice that Stringer, whose mortgage was prior to all the others except one, consented to a deduction of over two hundred dollars, receiving twenty-seven hundred dollars in full satisfaction. This left in complainant's hands, after the state was paid, over nine hundred dollars, two hundred and ten dollars of which he has paid to defendants, and the rest retained.

We have considered this case with care and cannot accept the construction put by complainant on the contract, as it was drawn before the interlineation was made. In the con-

struction of a contract all its parts must be examined, and effect given to every word and phrase if practicable.—*Norris v. Showerman, Wal. Ch., 206; S. C. on Appeal, 2 Doug. (Mich.), 16; Paddack v. Pardee, 1 Mich., 421.* This is a familiar rule of construction.   The clause of the contract which required complainant to pay over to defendants the surplus of the Rulifson moneys must therefore be understood not to conflict with the added clause, but capable of harmonious construction with it.   It certainly would not be a harmonious construction that would entitle complainant to retain in his own hands the major part of that surplus.   But it is quite unnecessary to apply to the contract any other rules than those which common sense and the ordinary meaning of words would suggest.   When one agrees to discharge a mortgage "at the expense" of another, the common understanding of the words would be, in the absence of explanation, that he was to do so on being reimbursed the expense attending the draft, execution and recording of papers.   A man holding a mortgage would not agree to discharge it on receiving "the expense" of doing so; he would not regard his interests as sufficiently protected unless he stipulated for payment, as well as for the expenses attending a discharge.

It was said in *Youell v. Allen, 18 Mich., 107, 109,* that the evidence of mistake in a written contract, on which the court should act in giving relief, ought to be so clear as to establish the fact beyond cavil.   Especially should this be the case when the party setting up the mistake has had the contract prepared by his own professional adviser, and apparently with care and deliberation.   No such satisfactory evidence is found in this case.   On the contrary, we think the evidence preponderates in favor of the defense, and that the construction of the contract as complainant would have it would not be what he insists was agreed upon.

This conclusion requires a reversal of the decree, and it must be reversed, with costs, and the bill dismissed.   Defendants ask a decree in their favor for the moneys now in

complainant's hands, but this cannot be awarded. There is no cross-bill, and therefore affirmative relief cannot be given. Moreover, the remedy at law is entirely adequate.

The other Justices concurred.