Mr. Justice Montgomery
delivered the opinion of the Court:
In this cause the bill was filed to quiet title to “ two parts *323 of a tract” of land aggregating nearly sixty-six acres. The defendants appeared and answered. Testimony was taken and the cause is certified here for hearing on pleadings and proofs.
The material facts are substantially as follows: At some time shortly prior to 1802 one Henry Duley died seized of some real estate situated in the District of Columbia and known as “Turkey Thicket,” comprising about one hundred and sixty acres, and including the parcels in controversy here. Duley left surviving six sons, Jonathan, William, Joseph, John, Hezekiah and Zadoc, and four daughters; Sarah, who died intestate shortly after the death of her father, leaving children, and Ann, Eleanor and Sophia. On the first day of July, 1802, William bargained with his sister Eleanor for her interest in the estate, paid her in full, took her receipt and the bond of her husband, conditioned that she should convey to him on or before January 1st next thereafter. On the 3d day of May, 1804, Jonathan and William executed to Samuel Harrison Smith their joint and several bond in the sum of $3,200, reciting that they had “agreed to bargain and sell” to Mr. Smith the entire parcel at $10 per acre; that he had paid $800 cash and was to pay the balance in one year, upon payment of which they were to convey or “ cause to be conveyed ” said premises. Mr. Smith went into immediate possession of the entire purchase, and afterwards, and in due time, Joseph, Zadoc, Jonathan, John, Hezekiah, and Ann, and the heirs of Sarah, deeded their respective interests direct to Mr. Smith. On the 12th day of February, 1805, Sophia deeded her interest to William, which deed was recorded in-the following October. On the 6th day of the next November, Eleanor, as she had previously and on the first day of July, 1802, agreed, executed to William a deed of her interest, which deed, because of some alleged defect in the acknowledgment and delay in its delivery, was supposed by all concerned to be invalid and was never recorded. On the first *324 day of October, 1807, Sophia executed to Mr. Smith a deed describing and purporting to convey the same interest which she had theretofore deeded to William. On the 28th day of November, 1807, William executed and delivered to Mr. Smith a deed by which he granted, bargained, transferred, &c., “all the estate, right, title, interest, property and claim ” which he-had “in and to two * * * parcels of land designated and known by the name of ‘Turkey Thicket’ * * * descended to the said William Duley (among others) as one of the children and heirs at law of Henry Duley, deceased,” covenanting that “said William Duley * * * has full * * * power * * * to sell and convey one child’s part, that is, one-tenth part, of * * * said tracts or parcels of land,” and to “warrant and defend the same premises to the said Smith, &c.”
Smith continued in .possession of these lands, and others, which constituted his homestead from the time of his contract with Jonathan and 'William until January 1, 1839, when he sold and deeded the entire property, and the title so conveyed by Mr. Smith has, through mesne conveyances, vested in the complainant, who, as it is alleged, and as is probably true, “ paid full value for the whole title, supposing that he acquired the same.” Immediately upon his purchase complainant took possession and has ever since been, and still is, “ in full possession thereof.” The bill avers that by reason of the language of the covenants in the deed from William Duley to Mr. Smith, and because of the failure to record the deed from Eleanor to William, “the paper and record title of complainant is apparently limited to eight undivided tenths,” which “ record defects create a cloud on complainant’s title; ” that the defendants constitute “ all of the heirs and decedents ” of William Duley. The bill prays for a decree declaring complainant “ vested * * * with all the right, title, interest, and estate of the defendants * * * as the heirs at law * * * of William Duley,” and that “ a trustee may be appointed to convey *325 all the interest of said defendants to complainant in fee simple. No question is made but that William Duley is dead, and that the defendants constitute his sole and only heirs at law. The defendants, however, say that the entire purchase price was never really paid by Mr. Smith, and they call attention to the fact that in a bill in equity which he filed in 1824 against William Duley, Eleanor, and her husband, asking that they be “ decreed to convey and assure the remaining tenth ” — the share of Eleanor — to him, he admitted that $74 of such price was then unpaid. They insist that the deed from William Duley to Smith cannot reasonably be construed as being intended to convey, or as conveying more than a tenth interest, and that, therefore, inasmuch as William, when he-executed the deed, actually owned the three-tenths, the shares of Eleanor and Sophia, respectively, as well as his own share, he died owning the remaining two-tenths, which two-tenths had descended to defendants. They urge that the bond executed by Jonathan and William was not admissible in evidence, because it could not be allowed to affect the construction of William’s deed, and because the statute of Maryland of 1715 provides' “ that no bonds * * * shall be * * * admitted in evidence against any person * • * * after twelve years,” &c. Thompson’s Digest, 289, par. 5. And, lastly, they say, that if the deed from William to Smith did, on its face, purport to convey the three-tenths interest which he owned, then, as a matter of fact, the title of complainant is unclouded, and there would be “ nothing for a court of equity to remedy, and the bill should be dismissed.”
It is true that Mr. Smith in the old (1824) chancery bill did aver that $74 of the purchase price, which he had agreed to pay Jonathan and William for this property, was still unpaid. We are not only unable to find any evidence in the record .indicating its subsequent payment, but it seems probable that the same has never been paid. Passing this question for the present, what construction shall be *326 given to the deed executed November 28,1807, by William Duley to Mr. Smith, and, first, was the bond admissible in evidence ?
The Maryland statute has no application to a case like this. If such a bond was sought to be enforced against the' maker or any right or duty or obligation under it was being litigated, that would be quite another matter. The statute was manifestly not intended to prohibit its use as evidence in all proper collateral ways. “The object of the legislature * . * * was not to prohibit the giving in evidence of a * * * bond * * * where it might be above twelve years’ standing, or in any case where it was not itself the foundation of the action.” Lamar vs. Manro, 10 G. & J., 50. Should this bond be considered as bearing on the question of the construction of this deed and in determining the equitable rights of the parties? We think it may. “ In construing a deed, the court places itself, as nearly as possible, in the situation of the contracting parties.” 3 Washburn on Real Property, 384. The bond could not of course be considered for the mere purpose of construing a deed which was plain and unambiguous. But here is a deed which on its face is at least uncertain. It is plausibly contended on the one hand that fairly construed it intends to convey the whole of the grantor’s interest in the property ; and on the other hand, that the words which follow the grant read with the words of the grant indicate a different intent. We think there can be no doubt that for the purpose of ascertaining the intent of- the parties to the deed the whole text of the instrument should be examined and every part considered. Paddock vs. Pardee, 1 Mich., 425. And for the same purpose as well as to assist us in determining the real equities of this controversy, the condition and situation of the parties, as well as other collateral facts, may- be proven and considered. 3 Washb. on Real Prop., 384; 1 Mich., 425; Story vs. Benedict, 5 Conn., 220; Wilson vs. Troup., 2 Cow., 228.
*327 “ Parol evidence may be resorted to in explanation of and to explain latent ambiguities.” Martindale’s Law of Conveyancing, par. 88. “References may be made to contemporaneous writings and prior deeds.” Id., 92.
The defendants insist, however, that as matter of fact, William Duley did not intend by his deed to convey more than the undivided one-tenth. They exhibit the deeds made by the brothers and sisters of William, and invite attention to the fact that the consideration recited as well as the language of the grants and covenants and the descriptions in each are substantially if not identically the same as in the deed of William. They urge that neither he nor Mr. Smith understood that he was conveying more than his own inherited interest. They argue that whatever may have been the real situation, neither of the parties supposed that William, when he executed his deed, owned either of the shares of Eleanor or Sophia. They call attention to the fact that in October, 1807, Sophia.deeded direct to Smith, who, seventeen years later, filed 'his bill in equity' to compel Eleanor to convey to him, and so they say that manifestly neither William nor Mr. Smith supposed that William had-more than a tenth interest, and they submit that it must, therefore, follow that William could not have intended to convey and Mr. Smith could not; have supposed that he was then receiving the interest of either Eleanor or Sophia. We do not, however, find it necessary to determine this question of fact. William and Jonathan had obligated themselves by their bond to convey to Mr. Smith the entire title to these lands. William executed a deed which fairly purports on its face to convey all the right, title and interest which he then had. Shall he, or those claiming under him, be allowed in a court of equity to assert that notwithstanding his agreement, and notwithstanding his deed on its face will bear that construction, still as a matter of fact he did not so intend.
Let us briefly recapitulate the facts:
1. More than eighty years ago Jonathan and William *328 duly executed an agreement under their respective hands and seals, agreeing “ to cause to be conveyed to Mr. Smith the entire title to these lands.”
2. Mr. Smith then paid one-half or thereabouts of the purchase price, went into possession, and there seems no reason to doubt that he and those claiming through and under him have ever since occupied or at least controlled this property, claiming to own it.
3. William afterwards made a deed by which he manifestly intended to convey all the interest he had. .
4. During the entire time William Duley and his. heirs at law have acquiesced and made no claim of any interest.
5. Meantime the property has, through a large number of mesne conveyances, reached the complainant, who claims to have been when he purchased, and doubtless was, ignorant that the title was at all clouded; and
Lastly. While the last $74 was probably never paid, Smith evidently was always ready, willing and anxious to pay it and have the supposed trouble with his title cleared up.
This is the situation that confronts us: “ Courts of equity ‡ * discourage a stale demand * * * when the person setting it up has lost his moral * * * right to enforce it.” Wood on Limitation of Actions, Sec. 60, 121.
A court of equity has always refused its aid to stale demands where the party has slept upon his rights for a great length of time. “ Nothing can call forth” a court of equity “ into activity but conscience, good faith and reasonable diligence. Where these are wanting the court is passive and does nothing. Laches are always discountenanced.” Boardman vs. Wathem, 1 How., 189; Piatt vs. Voltier, 9 Peters, 413. “ The law of courts of equity * * * is that it will not entertain stale demands.” Id., 413. A claim “ brought forward after a sleep of near thirty years, during which period the original parties * * * have disappeared and are no more,” and acquiesced in during all that time by adverse interest should remain in oblivion.” Randolph *329 vs. Ware, 3 Cranch, 503. “ Where a man with * * * sufficient * * * means of knowledge of his rights and of all the material circumstances of the case, freely and advisedly does anything which amounts to the recognition of a transaction, * * * or lies by for a considerable time and knowingly and deliberately permits another to deal with property?- * * * the transaction * * * becomes unimpeachable in equity.” 2 Herman on Estoppel, par. 1063. “ This principle applies to the representatives of the party who has acquiesced.” Id., 1064.
In view of these facts and of these authorities what is the duty of this court?
Suppose that William, in his life-time, had sought for a reformation of his deed, or to recover an undivided interest in these lands. Is it not entirely clear that he could not have succeeded? Gould he have been allowed in a court of equity to have asserted that while he had agreed to convey to Mr. Smith the entire title, and while his deed on its face would bear that construction, still, as a matter of fact, he did not intend so to do and th.e deed should be reformed? Most certainly not. All parties for all these years have treated the deed from Sophia to Mr. Smith as having conveyed to him her interest, and to him and his successors as the owners of these lands. It must be held that William Duley and those claiming under him are estopped from asserting that his deed to Mr. Smith did not convey all the interest which he had; we must so conclusively presume.
Lastly, does the condition of the record constitute a cloud which entitles the complainant to the relief for which he asks? “There is a cloud so long as by the record it is questionáble if the title of the defendant is not prima facie better than- the complainant’s.” Eaton vs. Trowbridge, 38 Mich., 457. We think equity should interpose to remove a cloud of this character.
We observe that the complainant .in his bill “charges upon information and belief” that the $74 mentioned in the *330 old 1824 chancery bill “ was long since fully paid, but should the court find said amount * * * still due, complainant * * * tenders himself ready and willing and offers to pay the same into the register of this court or to the defendants,” &c. We have said above that it seems to us probable that this $74 has never been paid. In view of the complainant’s concession, therefore, and without determining whether defendants might, as a matter of right, demand this sum of complainant, we think best to direct that the complainant shall, as proposed in his bill, pay to defendants the said sum of $74.
And now in regard to the costs, it is not claimed that the defendants ever “ laid claim ” to any interest in these premises. A plaintiff who has filed a bill to quiet his title which had been neither impeached nor threatened was charged with costs. 2 Daniels Ch. Prac., 1381, note 6.
On the whole we think complainant should pay costs. Upon payment, therefore, to defendant’s solicitor, or to the register of the court of the sum of $74, together with the taxable costs of the cause, a decree will be entered in conformity with the prayer of the bill.