MONROE YOUNG and another, in equity, *vs.* CARLTON McGOWN.

*Equity—mistake as a ground of relief.*

An execution was satisfied by levy upon real estate; by mistake the apprais-
ers, in their certificate, described a different parcel from that in fact taken;
and the officer, in his return, adopted this erroneous certificate and descrip-
tion, the error not being discovered for several years; the judgment creditor
quitclaimed to one of the complainants, who conveyed to the other with
warranty, both deeds using the language of the appraisers to describe the
premises thereby conveyed.

*Held*, that a bill in equity to so reform the levy as to make it apply to the land
really taken could not be maintained by these complainants against the son
and grantee of the execution debtor, after the death of the father and of
two of the appraisers, even if it could have been supported in favor of the
original creditor against his debtor.

This bill has no equity, since the land conveyed by the deeds was not that
actually seized on execution, the title to the latter (if any passed by the
levy) remaining in the judgment creditor; nor have the complainants any
joint interest; nor was there any mutual mistake, as the original proceed-
ings were *in invitum*, and the debtor was passive.

Mistake, to afford any ground for relief in equity, must be that of both parties.

BILL IN EQUITY.

Upon an execution in favor of one Pinkham against James
McGown, the lot marked B. in the accompanying plan was seized,
but, owing to the mistaken supposition that the estate which actu-
ally belonged to Edward McGown—though in the occupancy of
Peter McGown, and known as "the Peter McGown lot," being
under contract for a purchase by said Peter—was the property of
Peter McGown, the appraisers' certificate was made applicable
only to the lot marked A. on the plan, which never belonged to
James McGown.

Owned by PETER McGOWN.

N

W    E

S

County Road.

A.

Occupied by PETER McGOWN, but owned by EDWARD McGOWN.

B.

Owned by JAMES McGOWN.

The description in the levy was as follows : "Beginning at the eastern side of the county road leading from Ellsworth to Bangor *at the Southwest corner of Peter McGown's lot*; thence running easterly, along the line of said McGown's lot, fifty rods ; thence southerly, at right angles with the aforesaid line, twenty-one rods to a stake and stones ; thence westerly, on a line parallel with the first-mentioned line to the county road ; thence northerly on said road to the place of beginning." The running really began at the Southwest corner of the *Edward* McGown lot, which was erroneously supposed to belong to Peter, as before stated, and was carried around lot B. ; but, by beginning on the road at the lower corner of the land then in fact owned by said Peter, and running the given courses and distances, lot A. will be inclosed.

In an action at law, *Young v. McGown*, 59 Maine, 349, this court held that lot A. was the one that answered the calls of the levy, and that parol evidence was inadmissible to show that B. was the lot intended.

The officer making the levy adopted the certificate and description of the appraisers and made them part of his return upon the execution.

The further statements of the bill and of the relief prayed for are sufficiently given in the opinion; except that it may be well to add that Pinkham entered upon and held lot B. under his levy up to August 18, 1860, when the deeds to the complainant, Parker, and from him to Young, were made; both conveyances copying the description, as above quoted, from the appraisers' certificate.

The defendant demurred, and the hearing was upon the demurrer.

*A. Wiswell*, for the complainants.

*Hale & Emery*, for the respondent.

APPLETON, C. J. This is a bill in equity in which the complainants ask the aid of the court to correct and reform the mistakes in the descriptive portion of a levy, to which the plaintiff, Young, claims title by mesne conveyances from the judgment creditor; or, rather, to compel the defendant, who has title to the land upon which the judgment creditor *intended* to levy, but which his levy entirely fails to describe, to release to him the land so intended to be (but not) levied upon.

It appears from the allegations in the bill, the truth of which is admitted by the demurrer, that one Vassal D. Pinkham, at a court holden at Augusta, in and for the county of Kennebec, on the fourth Tuesday of November, A. D., 1857, recovered judgment against one James McGown, for the sum of sixty-eight dollars, debt or damage, and one hundred and twenty-one dollars and twenty-one cents, costs of suit; that on this judgment execution duly issued, and on the twenty-sixth day of January, 1858, the

said Pinkham caused the execution to be levied on certain real estate, as the estate of said McGown; that there is a mistake in the description of the premises as described in the appraisers' return, and adopted by the officer making the levy, by which, according to the description, a different lot is set forth as having been levied upon than was levied upon in fact; that on the eighteenth day of August, 1860, said Pinkham conveyed the premises, as described in the levy, by deed of quitclaim, to Orrin Parker, who, on the same day, conveyed them by deed of warranty to the complainant, Young; that said Young entered upon the premises upon which the levy was intended to be made, but which were erroneously described; that on the seventeenth day of July, 1862, said James McGown conveyed to his son, the defendant, his homestead farm, embracing the premises in controversy; that the consideration of the conveyance was the maintenance of said James by this defendant; that the said defendant well knew that these premises were in possession of the complainant, Young; that two of the appraisers have deceased, so that their certificate cannot be amended; that the said James has deceased, leaving no estate; and that this defendant has commenced a suit against this complainant, Young, to recover possession of the premises upon which it is alleged the levy was intended to be made.

The prayer of the bill is, that this respondent may be enjoined from prosecuting his suit against the complainant, Young, and be ordered to pay damages, and further be decreed to release to said Young the premises as claimed by him to have been actually appraised, and upon which the levy was intended to be made.

To this bill a demurrer has been filed. The only question presented is whether, assuming the allegations of the bill to be true, it sets forth sufficient cause for the equitable interference of the court.

It was determined in *Young v. McGown,* 59 Maine, 351, that the levy was not made upon the land owned by James McGown, the judgment debtor, but upon land in the occupation of Peter McGown, the title to which was in one Edward McGown. Con

sequently the judgment creditor acquired nothing by his levy. The grantee of the judgment creditor now seeks to compel a conveyance of land to which his grantor had no title, and upon which no levy, according to the officer's return, has ever been made. The premises described in the levy were conveyed by Pinkham, the judgment creditor, to Orrin Parker and by him, by deed of warranty, to Munroe Young.

This bill is brought in the name of Young and Parker. But the land conveyed to them is not the land upon which they claim the levy to have been made, or of which a release is asked for. Their deeds convey the tract of land which belonged to Edward McGown. There is no allegation of mistake in these deeds. There has been no conveyance to them of the land upon which the levy was actually made. The title (if any has been acquired by the levy as intended to be made) in the premises levied upon in fact, still remains in Pinkham. He has made conveyance of the land which the bill alleges was appraised and set off to him, and to which the judgment creditor had no title because there was none in the judgment debtor.

Further, it is difficult to see how these complainants can properly join. Parker has no interest in any land in controversy. He owns nothing jointly with Young to whom he conveyed. The complainants are not entitled to, nor do they pray for, joint relief. Story's Eq. Pl., §§ 509, 510. Besides, if the relief was granted, Young would have as its result, the land which the levy should have embraced, and the covenants of warranty of the deed of his co complainant, which would remain outstanding.

These complainants cannot claim relief on the grounds of trust or of fraud, for no trust is shown, and no fraud is pretended.

The bill is sought to be maintained because of the mistake of the appraisers and the officer in making their return. But "in order to sustain a bill for relief under this equity, it is essential that the error be on both sides, and that it be admitted by the defendant or distinctly proved. It must be a mistake on both sides, for if it be by one party only, the altered instrument is still

not the real agreement of both. A mistake on one side may be a ground for rescinding a contract, or for refusing its specific performance; but it cannot be a ground for altering its terms." *Addams' Equity*, 171. Here, however, there is no mutual mistake. The proceedings were under the Statutes of the State and *in invitum*. The debtor made no mistake, nor was he in any way responsible for the one which was made. The mistake arose from the negligence of the creditor, or the carelessness of his officer. The sheriff should have made his return of a levy on the land of the judgment debtor. He did make it upon the land of a stranger. The mistakes which equity will correct are not those which might have been avoided by common and ordinary care, and which are the results of negligence.

It seems that equity will not reform a voluntary deed as against the grantor. *Brown v. Kennedy*, 33 Beavan, 147; *Phillipson v. Kerry*, 32 Beavan, 637. Upon the same ground, the remedial power of a court of equity does not extend to the case of a defective fine against the issue, or of a defective recovery, as against the remainder man. 1 Story's Eq. Jur., §§ 177, 178.

As two of the appraisers have deceased, the misdescription of the premises in their return cannot be amended. "The plaintiff," observes Hathaway, J., in *Lumbert v. Hill*, 41 Maine, 482, can not have the relief he seeks, unless the officer can have leave to amend his return on the execution. To reform the levy and deeds as prayed for, and thereby change the existing legal titles of the parties, if it could be done, would render the registry of deeds of little value, as furnishing any certain evidence of title to real estate." The power of the court to grant leave to an officer to amend his return is ample for the protection of the legal rights of all parties interested in his doings.

It is to be borne in mind that the parties to this bill were not parties to the levy, and that the judgment debtor has long since deceased.

It is for the creditor to point out to the officer holding his execution the land upon which he wishes the levy to be made. It is for

the officer to see that a compliance is had with the requirements of the statute. It is no part of the duty of a court of equity to relieve against the negligence of the one, or to correct the blunders of the other. *Bill dismissed with costs.*

CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred.