## MILES *v.* SHREVE.

1. LANDLORD AND TENANT—LEASE—NATURE.

   An instrument designated in its body as a lease, demising and leasing the realty described in the writing for a stated period and rental, with covenants for quiet enjoyment and peaceable surrender of the property leased, at the end of the term, constitutes a valid letting or demise of the premises.

2. SAME—LEASE—DEFINITION.

   A lease is an agreement transferring the right to the possession and proceeds of lands and tenements on the one side for a recompense of rent or other consideration from the tenant.

3. FRAUDS, STATUTE OF—LEASE—LANDLORD AND TENANT.

   Under the provisions of the statute of frauds requiring the lease of real property for more than the period of a year to be in writing, parol evidence that a lessee orally consented to pay an increased rental is insufficient to

modify the terms of a written lease of premises for a five-year term.

4. REFORMATION OF INSTRUMENTS—EVIDENCE REQUIRED.

It is elementary that the burden of proof is strongly upon the person asking for reformation of a writing on the ground of mistake and it must be proved clearly and convincingly.

5. MISTAKE—REFORMATION—RESCISSION.

Reformation on the ground of mistake must be based on a mutual error.

6. SAME—FRAUD—STATUTE OF FRAUDS.

In a suit to reform a written lease, which plaintiff claimed did not contain all the provisions intended, and that a building to be built by complainant on the property leased should not cost, as fixed by the negotiations, to exceed $3,500, and the scrivener omitted to include the clause in the instrument, the complainant was not entitled to relief on the theory that defendant orally consented to an increase in rent because- of the increase in cost of construction.

7. SAME.

Evidence considered, and *held*, not to sustain the complainant's contention that a mutual mistake occurred.

Appeal from Wayne; Mandell, J. Submitted January 20, 1914. (Docket No. 169.) Decided March 27, 1914.

Bill by Mary Miles against Charles F. Shreve for reformation of a lease. From a decree for defendant, complainant appeals. Affirmed.

*James H. Pound,* for complainant.

*Ezra P. Beechler,* for defendant.

STEERE, J. In this suit complainant sought a decree compelling rescission and cancellation or reformation of a certain "contract or lease" between herself and defendant on the following grounds, as stated in her counsel's brief:

"*First,* the scrivener and parties hereto, one or all, having made a mistake; and, *second,* that, after the mistake was discovered, the defendant agreed with complainant to rectify the mistake, and agreed to the drawing of a new lease, with a different rental than that contained in the original paper in suit, which, I submit, it is manifest was drawn as the contract for a lease, and that, relying upon the said promise, complainant expended over $7,000."

The case was heard in the court below on pleadings and proofs taken in open court, resulting in a decree dismissing complainant's bill.

It is undisputed that the instrument in question was executed by the parties hereto, signed, witnessed, and delivered on October 13, 1911. The alleged mistake was a failure of the scrivener, when preparing the contract, to insert a limitation on the amount of the investment, including the cost of the building and grounds therein mentioned, to $5,000, which, it is claimed by complainant, was the sum agreed upon between the parties in their negotiations. The writing was prepared by complainant's agent, or attorney, and is as follows:

"It is agreed between Mary Miles, party of the first part, and Charles F. Shreve, party of the second part, witnesseth as follows:

"Whereas, the party of the first part is the owner of the following described premises, situate in the city of Detroit, Wayne county, Michigan, to wit, lot 46 of Fletcher's subdivision, situate on the west side of Third avenue, between Warren and Putnam avenues, Detroit.

"Whereas, the party of the first part, in consideration of the lease of said premises to be entered into with said party of the second part, proposes to erect upon said property a two-story, solid brick building, for store and residence purposes: Now, therefore, it is agreed between the parties, viz.:

"*First.* The party of the first part, for and in consideration of the rents, covenants and agreements hereinafter mentioned, on the part of the party of

the second part, to be paid and performed, has demised and leased, and by these presents does demise and lease unto the said party of the second part the property above described, together with all and singular the benefits and privileges to the said premises belonging, and to the building to be erected thereon, as hereinafter mentioned, for and during and until the full end and term of five years from and after the completion of said building to be erected on said premises.

"*Second.* The annual rents of said premises for said period, from and after the completion of said building shall be six hundred dollars, payable fifty dollars monthly in advance on the first day of each month, beginning after said building is completed and ready for occupancy.

"*Third.* Said first party agrees to erect upon said premises a two-story and basement solid brick building, as agreed and adopted by the parties hereto. The construction of said building shall be commenced at once, and shall be proceeded with as rapidly as practicable under the circumstances.

"*Fourth.* Said building is to be used by said second party for his business as a grocer, meat market and residence purposes.

"*Fifth.* And the said party of the second part does hereby hire the said premises for the said term of five years, as above mentioned, and does covenant well and truly to pay, or cause to be paid, unto the said party of the first part, her representatives, heirs and assigns, at the dates and times above mentioned, the rents above reserved.

"*Sixth.* Said party of the second part does further covenant that he will not assign this lease or any interest therein, or sublet the said premises, or any part thereof, without the written assent of the party of the first part. And also, at his own expense, during the continuance of this lease keep said premises and every part thereof, in as good repair, and at the expiration of the term yield and deliver up the same as when taken, reasonable use and wear thereof, and damage by the elements excepted.

"*Seventh.* And said party of the first part does covenant that the party of the second part, on paying the aforesaid installments, and performing all the

covenants aforesaid, shall and may peacefully and quietly have and hold, and enjoy the said demised premises for the term aforesaid.

"*Eighth.* And the party of the second part does further covenant and agree, that at the end of said term he shall and will peaceably and quietly leave, surrender and yield up the said premises unto the party of the first part, her heirs and assigns.

"*Ninth.* Second party is privileged, at his own expense, however, to erect and build a barn on the rear of said premises. It is understood between the parties hereto, that at the expiration of this lease the same may be renewed for a further period of five years at a monthly rental not to exceed fifty-five dollars per month. First party agrees if at any time she should desire to make a sale of said properties, to give said second party the first opportunity of purchase.

"It is further agreed that the covenants and conditions in this lease contained, shall be binding upon the heirs, representatives and assigns of the respective parties hereto. It is further agreed between the parties hereto to assure the first party of the punctual payment of the rents and performances of the covenants in this lease mentioned, that second party shall, upon the signing of these presents, pay to said first party, as collateral security the sum of one hundred and fifty dollars, to be deposited by first party in a savings bank, and to bear three per cent. interest. Said first party to retain said one hundred and fifty dollars during the term of this lease, and to apply the same upon the last three months period of this lease, and upon the termination hereof, to pay to said second party all interest earned thereon during the period of this lease. Should second party at any time make default in payment of rent or performances of the covenants above mentioned, he shall forfeit said sum of one hundred and fifty dollars, and this accumulation.

"In witness whereof the said parties have hereunto set their seals this 13th day of October, A. D. 1911.

"CHARLES F. SHREVE.

"In presence of          "MARY MILES.

"JOHN MILES.

"MINNIE SHREVE."

"A lease is defined to be a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent or other income on the other." *Sawyer* v. *Hanson*, 24 Me. 542.

This instrument is clearly a lease. It is so designated in its body. In the present tense it demises and leases, with full and familiar conditions couched in legal phraseology, the premises therein described for a period of five years, at a stated rental, with the usual covenants of quiet enjoyment, peaceable surrender, etc., and is in compliance with all the legal requirements of a lease.

The $150 security mentioned in the last paragraph of the lease was paid and deposited for complainant as provided, and has not been returned. Complainant erected upon the premises described a two-story, solid brick building in compliance with the lease, and defendant entered into possession thereof on May 12 or 13, 1912. He has continued in possession since, regularly sending complainant $50 each month, according to the terms of the lease, which she has regularly returned, claiming that defendant agreed to pay her 10 per cent. on the investment, and that she invested in the property, including the lot, $7,650. The checks which she returned, certified by the bank upon which they were drawn, have been deposited with the clerk of the court subject to her order.

For some time prior to the execution of this lease, defendant was occupying a rented store on Fourth avenue, paying $50 per month rental, and had been notified that he must soon vacate, owing to the premises he then occupied having been sold to parties who desired the store for their own use. Complainant was an acquaintance and customer of defendant there, and he, knowing she owned and rented property, proposed to her that she build and rent to him a store building in that vicinity, where he had developed his business and was known. Negotiations were entered

into, and the matter of cost, rent, etc., canvassed between them. It is evident from the story of their negotiations that both parties at first understood and expected that she could and would furnish what he wanted, as they had planned, at an expenditure of about $5,000. As defendant was being forced out of the building he then occupied because he had no written lease, he insisted, as they approached an agreement, on a lease from complainant for a term of years, and offered to advance $150 as security for fulfillment on his part. The written instrument, as above set out, was the result of their negotiations, and was prepared by complainant's conveyancer. It is to be noted that the rate of rental specified was more than 10 per cent. on the $5,000 which they had talked of and estimated as the cost of the property.

It is her testimony that the lease was to be based on a $5,000 investment proposition, and a pencil memorandum was made to that effect by an attorney, Mr. Look, who prepared a form of lease for her which stated the building was not to cost over $3,500, the lot having cost $1,500, but that, in preparing the lease for execution, whoever did the copying failed to include such provision. Her testimony as to this is unsupported by that of any one connected with the work of preparing the lease for her. No pencil form of contract or other memorandum was produced, nor did the attorney who prepared the form, or any one from his office, appear as a witness. Mr. Campbell, complainant's agent, who assisted in the negotiations and was a witness, gives no testimony to that effect. He testified that defendant agreed to pay 10 per cent. on the investment; that later, when it was found the building would cost $2,500 more than expected, and he told the defendant they, of course, would expect him to pay more rent, defendant said, "Go ahead and build it, and, when I get in there, I will do better;" that witness subsequently urged defendant to make a

proposition of $60 a month rent, and he at one time said he would do so, but finally said he would not pay any more.

Defendant denied making any other agreement than that contained in the lease, which he testified was brought to him by Campbell and complainant, who came together with it for his approval, and, after one or two additions which defendant insisted upon were made, it was executed, and his deposit of $150 for security then paid.

Before filing this bill, no notice of rescission of the contract was given by complainant, nor offer made to return the $150 paid her. Whether notice and offer of restoration is a prerequisite in equity proceedings for rescission and cancellation is a question on which the authorities are not all in harmony; but here, while complainant prays for a decree that "the said contract or lease be given up and surrendered for cancellation," and that she be relieved "from the burden thereof," the general scheme of her bill and prayer for relief is a reformation of the instrument to conform with what she claims was the agreement and understanding of the parties; the burden of her grievance and only mistake claimed in drafting the instrument being that it does not secure to her the amount of rent she is entitled to.

Her claim that defendant, subsequent to the date of the written lease, orally agreed to pay an increased rental, which is positively denied by him, if found to be true, furnishes her no ground for relief. It is undisputed that the lease was to run for five years. No question is raised as to that provision of their agreement. Section 9511, 3 Comp Laws (4 How. Stat. [2d Ed.] § 11395), expressly provides that:

"Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, be in writing,

and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized by writing."

It is elementary that the burden of proof is strongly upon the party asking reformation of a written instrument on the ground of mistake. The proof of mistake must be clear and convincing. 16 Cyc. p. 70; *Vary* v. *Shea,* 36 Mich. 388; *Case* v. *Peters,* 20 Mich. 298.

"Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error." 2 Pomeroy's Equity Jurisprudence (3d Ed.), § 859.

The mistake must be mutual. For relief by reformation in equity, it is essential that the error be made by both parties, and that it be admitted by defendant or distinctly proven. *Young* v. *McGown,* 62 Me. 56; *Ludington* v. *Ford,* 33 Mich. 123; *Dougherty* v. *Dougherty,* 204 Mo. 228 (102 S. W. 1099). In the latter case the mistake relied upon was that of the scrivener in drafting the instrument, and it was held to be a necessary averment in the pleading that he acted under the direction of both parties, otherwise the pleading does not charge the mistake to be mutual; it being said in confirmation of previous decisions of that State that "a mistake of a conveyancer will not constitute a mutual mistake as a ground for the reformation of an instrument, unless he acted for both parties."

In the case at bar there is absolutely no proof that defendant took any part in the preparation of this lease, knew who prepared it, or knew it was prepared until it was taken to him for his approval by complainant and Campbell, a real estate agent presumably versed in such matters, who assisted her in the business. When the parties had reached a tentative agreement, defendant asked for a written lease. They

prepared or caused to be prepared a proposed form of lease, and submitted it to him. The parties went over it together. He suggested a slight addition in regard to a barn being built at the back of the lot, and, with that change made by them, accepted the lease as they had prepared it, and the contracting parties then signed it. All else in regard to the matter rests in parol. Defendant testified that the rent there specified was the amount agreed upon between them, and that he never promised or agreed to pay more. Whether this is true or not is a question of fact, but, if true, the promise was oral. Complainant claims that, by subsequently urging her to proceed, with promises and assurances of increased rent after it was ascertained the building would cost more than was anticipated, defendant was guilty of conduct "equitably fraudulent." At most, as claimed by her, his conduct consisted of entering into a contract with her which was void under the statute of frauds.

To grant complainant relief in a court of equity on the ground that she has relied upon and been misled or deceived by such oral agreement is to nullify the statute of frauds.

In an action on a written contract, parol evidence is not admissible to contradict or vary its terms. In a suit in equity to correct or cancel it on the ground of fraud or mistake, only clear and convincing evidence can overcome the presumption that it contains the ultimate agreement of the parties in consummation of their previous negotiations. Complainant's testimony as to a mutual mistake in the lease is not clear and convincing. The unquestioned portions of the lease itself do not bear out her contention. The rental of $600 per year on a 10 per cent. basis calls for a building costing $4,500, instead of the $3,500 which she states the scrivener omitted to copy from the pencil form.

It is evident that the building cost more than was

anticipated. If complainant invested a total of $7,651.05, as she testifies, she is getting a little over 7 8/10 per cent., instead of 10, as she expected. While the contract may not be a highly advantageous one to her, it is not in itself so outrageously unconscionable as to shock the sense of justice, and move a court of equity to act for that reason.

We are constrained to agree, with the learned chancellor who heard the case, that complainant has not sustained her attack upon this instrument by such clear and convincing proof as applicable law and rules of evidence demand in order to justify a court of equity in granting the relief asked.

The decree is affirmed, with costs.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.