## VENTRO *v.* VENTRO.

1. DIVORCE—OPINIONS.
   Good practice requires that the trial judge in a suit for divorce advise the litigants of the basis for his decision by a writttten opinion which may also serve to assist the Supreme Court in reviewing the decision of the judge who saw and heard the witnesses.

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Courts § 132.
[2, 4] 3 Am Jur, Appeal and Error § 912.
[3] 17 Am Jur, Divorce and Separation § 46 *et seq.*

2. APPEAL AND ERROR—DE NOVO REVIEW.
    The Supreme Court hears appeals in chancery cases *de novo* but generally does not reverse or modify the decision reached unless such would have been the decision had the Supreme Court sat in the trial court.

3. DIVORCE—EXTREME CRUELTY—EVIDENCE.
    Trial court's finding for defendant husband on his cross bill for divorce on ground of extreme cruelty *held*, supported by record showing plaintiff to have manifested her extremely suspicious attitude toward her husband's absences in a manner which dissipated the mutual trust, regard, and affection of the marriage.

4. HUSBAND AND WIFE—SEPARATE MAINTENANCE—EVIDENCE.
    Record in suit commenced by wife's bill for separate maintenance on ground of extreme and repeated cruelty *held*, not to compel a finding for her.

Appeal from Wayne; Moynihan, Jr. (Joseph A.), J. Submitted April 6, 1961. (Docket No. 19, Calendar No. 48,963.) Decided November 30, 1961.

Bill by Genevieve D. Ventro against Andrew S. Ventro for separate maintenance with cross bill for divorce, both on grounds of extreme and repeated cruelty. Bill dismissed and divorce granted on cross bill. Plaintiff appeals. Affirmed.

*G. Daniel Ferrera,* for plaintiff.

*Fish & Fish (John J. Fish,* of counsel), for defendant.

SOURIS, J. This matter comes to us for review of the chancellor's decree dismissing plaintiff's bill of complaint for separate maintenance and granting defendant's cross bill of complaint for divorce.

Once again we undertake to review the history of a marriage, this one of 18-years duration. Shall the marriage be dissolved or shall 2 people, and their 4 children, continue at least a legal relationship which has long since become imbued with mutual ani-

mosity? It is our duty to make this decision based not upon a carefully compiled record of the whole of this marriage, but only of a part. We do not know what joy there once may have been for Andrew and Genevieve Ventro. But we do know something of the sorrow and the doubts which ultimately engulfed their marriage. The events, real and imagined, which have driven these 2 people to the public bar of a court, anger inflamed, pride wounded, the passion of vengeance aroused—events which took 18 years of marriage to compile—were compressed into 5 short days of hearings. It is on the record of these hearings—the record of the worst of marriage, not the best—we must base our judgment.

Under such circumstances rarely can there be certainty in the wisdom of such judgments which embrace the most intimate personal relationship in life. Usually, in contested cases for divorce, one partner seeks dissolution of the marriage and the other its preservation. Whatever the judgment, a haunting doubt persists. But in this case our burden is lighter, although no less sorrowful, for here both partners seek an end to the physical, emotional, and spiritual relationship of marriage, only one of them desiring for reasons of her own its formal legal preservation. Both concede reconciliation is impossible and the record clearly supports the validity of their concession.

Both Mrs. Ventro's bill of complaint for separate maintenance and her husband's cross bill for divorce are grounded upon allegations of extreme and repeated acts of cruelty. The testimony offered by plaintiff in support of her allegations were that her husband absented himself from home in the evenings without explanation, that he bragged to her about his misconduct with other women, that she discovered various items in his pockets and in his car suggestive of improper conduct with other females,

and that he denied he ever had loved her. Several witnesses offered by plaintiff, some of them private detectives, testified that defendant had been seen driving his car while accompanied by a female companion other than his wife. Two of the witnesses, one a neighborhood friend of plaintiff and the other the son of defendant's alleged female companion, testified that there were stories and rumors circulating in the neighborhood about defendant's conduct. It seems apparent from the record that there was an abundance of friendly advice freely offered by neighbors and family members to both plaintiff and defendant of the kind which only charitably can be described as meddlesome.

Defendant's testimony consisted of denials of the misconduct charged and of embarrassment socially and in his business affairs by his wife's frequent and unfounded charges of infidelity. He testified that Mrs. Ventro opened his mail, listened to his telephone conversations, followed him herself and had private detectives follow him, all without uncovering any support for her unfounded charges but, nevertheless, continued to unjustly accuse him of misconduct in private and public outbursts of vile langage and uncontrolled temper. His lone witness testified Mrs. Ventro used vile language around the home and in the presence of the children.

The chancellor endured 5 days of acrimonious charges, denials and countercharges at the conclusion of which he rendered his decision without opinion. It is to be regretted that we do not have the benefit of the chancellor's evaluation of the testimony offered. While not essential to our review of a chancellor's action, good practice requires that litigants be advised of the basis for the chancellor's decisions and we, of course, welcome a carefully prepared opinion of the chancellor who heard and saw the wit-

nesses for the assistance such an opinion gives us in reviewing those decisions.

While we hear appeals in chancery cases *de novo,* we generally do not reverse or modify unless we conclude such would have been our decision had we sat in the trial court. *Paul* v. *Paul,* 362 Mich 43. We are not convinced that the chancellor erred. The record discloses that plaintiff was possessed of an extremely suspicious attitude toward her husband's absences from the marital home. Encouraged by the volunteers of her neighborhood, she manifested her suspicions in a manner which drained this marriage dry of mutual trust, regard, and affection. We find ample support in the evidence for the decree of divorce in defendant's favor on his cross bill. There is nothing in this record which would compel a finding for plaintiff on her bill for separate maintenance.

Affirmed. Costs to defendant.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.