MANNAUSA *v.* MANNAUSA.

1. DEEDS—JOINT TENANCY—PARENT AND CHILD.

Circumstances concerning deed to defendant and his mother, as joint tenants with right of survivorship, are deemed controlling in suit by special administrator to set aside conveyances by which defendant and his wife acquired title, rather than straw-man conveyance some 8 years later to a third person and by latter to defendant brother and his defendant wife which may have been obtained from deceased through undue influence.

2. SAME—PARENT AND CHILD—PRESUMPTIONS—UNDUE INFLUENCE—FIDUCIARIES.

A rebuttable presumption of undue influence is indulged in cases involving conveyances from parent to child only where a fiduciary relation is found to exist.

3. WORDS AND PHRASES—FIDUCIARIES.

A fiduciary relationship arises only when there is a reposing of faith, confidence, and trust and the placing of reliance by one upon the judgment and advice of another.

4. DEEDS—PARENT AND CHILD—CONSIDERATION.

A parent may convey property to a child without any consideration.

5. SAME—MENTAL COMPETENCY—CONSIDERATION—FIDUCIARIES—UNDUE INFLUENCE—OPPORTUNITY.

Deeds of property to defendant and his late mother, as joint tenants with right of survivorship, are declared valid, where,

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 16 Am Jur, Deeds § 393.
[3] 23 Am Jur, Fraud and Deceit § 14 note; 16 Am Jur, Deeds § 40.
[4] 16 Am Jur, Deeds § 61.
[5] 16 Am Jur, Deeds § 85.
[7] 5 Am Jur 2d, Appeal and Error § 828.
[8] 1 Am Jur 2d, Accounts and Accounting § 62.
[9] 5 Am Jur 2d, Appeal and Error § 698.
[10] 14 Am Jur, Costs §§ 10, 11.

although the defendant was then living with his mother and contributed none of the consideration, it appears she was then mentally competent, did not repose any confidence or trust in him or rely upon his judgment, conducted other real-estate transactions, maintained her separate bank account, collected rents, and, generally, managed her own affairs, and plaintiff, special administrator of mother's estate, has failed to show defendant then obtained an interest in the property through fraud, coercion, or undue influence, wrongdoing not being inferred from mere opportunity.

6. ACCOUNTING—DOWN PAYMENT ON PROPERTY CONVEYED TO DEFENDANTS.

Conclusion of trial court in suit to set aside deeds and for an accounting *held*, to support finding of trial court that down payment for property conveyed to defendants, husband and wife, had come from funds of deceased, the husband's mother for whose estate plaintiff was special administrator, hence, order that, in effect, required defendant to account therefor is affirmed.

7. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—RECORD.

The Supreme Court hears chancery cases *de novo*, but will not ordinarily substitute its judgment for that of the trial court on questions as to which the testimony was in sharp conflict, unless a reading of the entire record convinces the Supreme Court that it would have reached another result had it occupied the position of the trial court.

8. ACCOUNTING—BURDEN OF PROOF—EVIDENCE—CARE AND SUPPORT OF MOTHER BY SON.

Testimony of defendant son and his wife in suit by special administrator of his mother's estate for accounting *held*, not to have sustained their burden of proof as to their claim that he had supported her for a greater part of the last 19-year period of her life.

9. APPEAL AND ERROR—QUESTIONS REVIEWABLE—BRIEFS.

Provision of decree in suit by special administrator of estate of mother of defendant husband, requiring latter to make repayment of sum of $300, which is neither briefed nor discussed by defendant, is not passed upon by the Supreme Court.

10. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

No costs are allowed in suit for accounting brought by special administrator of a woman's estate against her son and the latter's wife, where neither party has prevailed in full.

Appeal from Wayne; Cash (Paul R.), J., presiding. Submitted March 5, 1963. (Calendar No. 60, Docket No. 49,878.) Decided May 9, 1963. Rehearing granted in part July 17, 1963.

Bill by Florence Mannausa, by Earl Mannausa, her guardian, against William Mannausa and Clara Mannausa to set aside deeds and for accounting. Case continued by special administrator. Decree for plaintiff. Defendants appeal. Reversed in part, permitting two deeds to stand and charging defendants with certain sums against distributive share of decedent's estate, and remanding for entry of decree.

*Kirby L. Wilson, Jr.,* and *Kirby L. Wilson, III,* for plaintiff.

*Gussin, Weinstein & Kroll (William J. Weinstein,* of counsel), for defendants.

Kavanagh, J. Plaintiff, as guardian of the estate of his mother, Florence Mannausa, filed a bill of complaint in December, 1959, seeking cancellation of defendant's interests in certain parcels of real estate and a return of moneys allegedly obtained through the fraud of defendants and in breach of their fiduciary relationship with plaintiff's ward. Defendants, William Mannausa and his wife Clara, are the son and daughter-in-law of Florence Mannausa.

Florence Mannausa was adjudged to be mentally incompetent on April 23, 1959. She was subsequently committed to the Wayne county general hospital at Eloise, and died there in January, 1960, prior to the trial of this cause. Plaintiff thereupon obtained permission from the probate court to continue these proceedings as special administrator of the estate.

The transactions in dispute are as follows:

(1) A conveyance in 1945 of real estate and a dwelling commonly known as 4221 High street,

Ecorse, to Florence Mannausa and William Man-
nausa, as joint tenants with the right of survivor-
ship.

(2) A conveyance in 1950 of property at 13 Ruth
street, Ecorse, to Florence Mannausa and William
Mannausa, as joint tenants with the right of sur-
vivorship.

(3) A conveyance of the Ruth street property in
March, 1958, to Gladys Green who, 1 month later,
conveyed the property to the defendants.

(4) The payment by defendants in 1953 of $2,000
as the down payment on property at 14 Alexander
street, River Rouge.

(5) A 1959 withdrawal of $900 by deceased from
her bank account, which sum she allegedly gave to
defendant William Mannausa; $600 of this sum was
subsequently returned.

The decree of the trial court canceled defendants'
interests in the High street and Ruth street proper-
ties; vested the Alexander street property in de-
fendants free and clear of any claim by the estate
of Florence Mannausa; ordered defendant William
Mannausa to pay the estate $300, the unreturned
portion of the $900 withdrawn in 1959; and denied
William's claim for support of his mother.

A. High street and Ruth street properties.

In an opinion denying defendants' motion for new
trial, the trial court ruled that a fiduciary relation-
ship existed between deceased and William Man-
nausa during the period within which the disputed
transactions took place. The court further ruled
that William's inclusion as a joint tenant on the
deeds to these 2 parcels was obtained fraudulently in
breach of his fiduciary duty.

For the purposes of this *de novo* review we deem
it unnecessary to judge the correctness of the trial
court's findings relative to the 1958 "straw-man"

conveyances of the Ruth street property. Even if the record supports the court's conclusion that defendants obtained the signature of deceased through undue influence, the 1950 deed remains to control the rights of the parties. Therefore, we have examined with care the evidence surrounding the 1950 deed to the Ruth street property and circumstances attendant to the 1945 deed to the High street property.

In cases involving conveyances from parent to child there is a rebuttable presumption of undue influence only where a fiduciary relationship is found to exist. *Scheibner* v. *Scheibner,* 220 Mich 115. A fiduciary relationship arises "only when there is a reposing of faith, confidence, and trust and the placing of reliance by one upon the judgment and advice of another." *In re Jennings' Estate,* 335 Mich 241, 244.

From our review of the record we are unable to conclude William occupied the position of a fiduciary *at the time of the 1945 and 1950 conveyances.* While William resided with the deceased continuously until 1953, when he was 39 years old, the evidence is undisputed that from 1941 through 1953 deceased maintained her separate bank account, paid her bills, engaged in at least 4 other real-estate transactions, collected rents from her property, and, in general, managed her own affairs. Deceased twice sold the High street property on land contract, the second time in 1952 after the first land contract had been foreclosed. On neither occasion did she consult William, her cotenant, nor obtain his consent. She collected all payments on these land contracts.

The record fails to disclose any evidence of a repose of faith, confidence, trust, and reliance by deceased upon the judgment and advice of William during this period. Nor is there any evidence that deceased was mentally incompetent. The only evidence of mental incompetency prior to the 1959 ad-

judication concerned events that took place in 1958.

It was therefore incumbent upon plaintiff to show the 1945 and 1950 conveyances were obtained through fraud, coercion, or undue influence. This he failed to do. The record is barren of any evidence of such wrongdoing. Plaintiff's presentation at the trial appears to have been based solely on the allegation that Willliam did not contribute any of the consideration for the conveyances to deceased and himself as joint tenants. Even if we concede plaintiff met the burden of proof on this point, it would not form a basis for cancellation of William's interest absent a further showing of fraud, coercion, or undue influence. For a parent may convey property to a child without any consideration. *Wroblewski* v. *Wroblewski,* 329 Mich 61.

At most the record indicates William had the opportunity to exercise undue influence, fraud, or coercion with respect to these conveyances. But such wrongdoing cannot be inferred from mere opportunity. *Powell* v. *Pennock,* 198 Mich 573; *In re Jennings' Estate, supra.*

We, therefore, conclude the trial court erred in canceling William Mannausa's interests in the Ruth street and High street properties under the 1945 and 1950 deeds.

B. Alexander street property.

In dispute relative to this property was the source of the $2,000 down payment. Plaintiff relied on a statement in William's handwriting indicating the $2,000 was a disbursement from his mother's funds. William maintained the money was his and that he prepared the statement using plaintiff's figures in an effort to persuade plaintiff he was in error. The trial court ruled the money came from deceased's funds. Such conclusion was supported by the evidence, and we find no error.

However, the court decreed this property to be free of any claim by the estate. The apparent basis for this result was the following testimony of plaintiff in response to questions posed by the court:

*"The Court:* Anyhow, when you get everything paid off, you expect to have the 3 pieces of property back, High, Ruth, and Alexander, and the $500, approximately, that is down in the River Rouge bank, and is there anything else?

*"A.* Now, we have—my brother, I believe, mentioned it is in the record, I think it shows it here, a loan to my sister of $3,500, that was on a note.

*"The Court:* To Lyda?

*"A.* Yes, and $3,500, originally.

*"The Court:* What is it now?

*"A.* It is $2,800.

*"The Court:* It was $3,500, and it is now $2,800?

*"A.* She's been paying $50 a month until I asked her not to make any more payments.

*"The Court:* She doesn't deny she owes it?

*"A.* She gave me a receipt in acknowledgment.

*"The Court:* $50 payments, where do they go?

*"A.* She hasn't been making these payments. She's been looking after my sister for a year, and we didn't feel she should make those payments.

*"The Court:* How much of a credit do you expect to give her on this $2,800 that is now due?

*"A.* Well, just to, like, further temper this, and I think since it is just my brother and I—my other brother is deceased.

*"The Court:* Just the 2 brothers of you?

*"A.* Yes, and the other family are willing to accept whatever settlement we arrange which is fair and equitable to all. We feel we would forsake the $2,800. We would forsake the $2,000 on the Alexander street property and cancel that entirely out, as one offsetting the other.

*"The Court:* In other words, she owes $2,800 on the loan?

*"A.* Yes.

"*The Court:* And what about the 14 Alexander street?

"*A.* That is $2,000, so we would consider that both wiped out off the record.

"*The Court:* $2,000 she owes you?

"*A.* She owes my mother, yes.

"*The Court:* What about this Alexander property, how does that cancel out?

"*A.* If we were going to cancel what Lyda's obligation is, we should rightfully cancel William's obligation, too."

Lyda LaComb, the sister referred to in the quoted testimony, was not a party to this suit. Plaintiff's theory for an equitable distribution of the estate had no rightful place as a basis for the court's decree in this suit for an accounting. The $2,000 utilized by defendants as the down payment on the Alexander street property is a debt owed the estate and is properly chargeable against William Mannausa's distributive share of the personal estate. See *Marvin* v. *Bowlby,* 142 Mich 245 (4 LRA NS 189, 113 Am St Rep 574, 7 Ann Cas 559).

C. Defendants' claim for support of deceased.

The testimony relative to William's claim that he supported his mother for a greater part of the period from 1941 until her death was in sharp conflict. While the Supreme Court hears chancery cases *de novo,* where the testimony is in conflict this Court will not ordinarily substitute its judgment for that of the trial court unless a reading of the entire record convinces us we would have reached another result had we occupied the position of the trial court. A reading of the record in this case does not convince us that defendants sustained the burden of proof of their claim for support of the deceased. *Ventro* v. *Ventro,* 364 Mich 591.

Appellants do not brief or discuss the provision of the decree with reference to repayment of the $300. Therefore, we do not pass on the question.

Reversed in part. The case is remanded for entry of a decree in accordance with this decision. No costs, neither party having prevailed in full.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and O'HARA, JJ., concurred.