# STATE OF MICHIGAN

# COURT OF APPEALS

NANCY LaLIBERTE,

        Plaintiff/Counter-defendant-
        Appellee,

v

JOHN J. BRADBURY and LINDA K.
BRADBURY,

        Defendants/Counter-
        plaintiffs/Third-Party Plaintiffs-
        Appellants,

and

DAVID J. KRAMER,

        Defendant,

and

MICHAEL F. FRENCH and PHYLLIS M.
FRENCH,

        Third-Party Defendants-Appellees.

UNPUBLISHED
May 26, 2016

No. 326203
Luce Circuit Court
LC No. 2011-005435-CH

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

In this property dispute, defendants John and Linda Bradbury appeal as of right the trial court's rescission of a deed following this Court's vacation of a prior order that also rescinded the deed and a remand to the trial court for articulation of findings of fact and conclusions of law following. We affirm.

## I. BACKGROUND

As set forth in this Court's prior opinion,

> All of the property disputed in this matter was originally part of a 29-acre parcel purchased in 1973 by James E. Bradbury (Bradbury) and Ann A. Bradbury,

-1-

who are the parents of both plaintiff Nancy LaLiberte and defendant John J. Bradbury (John). In 1998, the parents added plaintiff's name to the deed as a joint tenant. In 2002, the parents transferred their interest in an approximately five-acre parcel, "parcel 1850," to defendants and Bradbury by quitclaim deed. However, plaintiff retained her interest in the entire 29 acres at that time.

In 2005, plaintiff became aware that the parents wished to convey all interests in parcel 1850 to defendants when she "received a quit claim deed in the mail," which her father verified by telephone was intended to convey only parcel 1850. The deed consisted of two pages, the deed itself, which lacked any description of the property, and an attachment, which contained the property description. Plaintiff undisputedly agreed to sign over her interest in parcel 1850, and to that end she signed the deed, which was witnessed by Alvin S. Bates and Dawn Henderson-Wiltz, and mailed it to Jimmy Bress, a notary and relative of the parties. Notwithstanding the requirements of MCL 55.285(5) of the Michigan Notary Public Act, Bress was not present at the signing itself.

At issue is a *second* deed purporting to convey a 15-acre parcel, "parcel 1800." Plaintiff insists that she executed only one deed, i.e., that for parcel 1850; however, John contends that plaintiff had agreed to sign over her interest in parcel 1800 as well. Like the deed for parcel 1850, the deed for parcel 1800 consisted of two pages, the deed itself, which lacked any description of the property, and an attachment, which contained the property description. Bress testified at his deposition, and the parties agreed at trial, that he never personally witnessed plaintiff execute the deeds, but he nevertheless notarized her signatures on each of the deeds. Both deeds reflect a signature date and a notarization date of November 9, 2005. John testified that he received two deeds back from Bress. However, John did not record the deed for parcel 1800 until the spring of 2007, and John's title company apparently lost the deed to parcel 1850.

In the meantime, the parents died in early 2006. Plaintiff became the executor of their estate and trustee of their trust, and in that capacity paid the 2006 taxes on parcel 1800. She testified that as far as she knew, she became the sole owner of the remaining 24 acres (excluding the 5-acre parcel 1850 which had been transferred to defendants), including parcel 1800. As part of her trusteeship of the parents' trust after their death, and pursuant to her belief that she became owner of 24 of the 29 acres, plaintiff told "everyone" that, inter alia, she intended to sell the property. Plaintiff testified that on July 29, 2006, she received a letter from John in response, expressing interest in purchasing the property, but only for a five-year land contract rather than cash. The letter, along with an envelope bearing plaintiff's address and postmarked July 29, 2006, was introduced at trial. John denied ever having written that letter, and he contended that it was factually inaccurate as well. John further denied having any conversations with plaintiff about purchasing the property, or indeed any conversations with her at all that did not go through an attorney, after their parents' deaths. Plaintiff testified that she responded on August 15, 2006, indicating that she could not accept any type of contract, that the estate had numerous bills left to pay, and that she would want cash for the sale of the property. This letter was also introduced at trial.

-2-

John testified that he received 2007 and summer of 2008 tax bills for parcel 1800 after he recorded the deed for that parcel. Plaintiff testified that she noticed that she had not been given a tax bill for the property and consulted the township treasurer, who advised her "that there was a deed signed over to John and Linda." At some point, plaintiff persuaded tax assessor Tim Teed that plaintiff was the proper owner of parcel 1800, and Teed redirected the tax bills to plaintiff. John contended that his title search showed that he was the proper owner of parcel 1800. In 2011, matters came to a head when plaintiff sought to sell parcel 1800 to third-party defendants, who had been long-term renters of that property.

Defendants presented expert opinion testimony by way of deposition from Thomas P. Riley, a forensic document examiner. He was provided with a number of exemplars of plaintiff's signature and asked to evaluate whether the signatures ostensibly from plaintiff on the two deeds were, in fact, her signatures. He noted that one of the deeds was a copy, albeit a high-quality one. He opined that it was "highly probable" that the signatures on the deeds were from plaintiff, but noted that there were "a couple of variations present in the questioned signatures that are not represented in the known signatures." He further cautioned that the known exemplars were from 2010 and 2011, whereas the questioned signatures were from 2005. Riley was not asked to, and did not, examine any other signatures. [*LaLiberte v Bradbury*, unpublished opinion per curiam of the Court of Appeals, issued July 15, 2014 (Docket No. 315975), pp 2-3.]

In the prior appeal, defendants not only argued that plaintiff had failed to meet her burden of proof entitling her to rescission of the deed, but raised an evidentiary issue regarding certain hearsay testimony related to a 2005 telephone conversation between Teed and James Bradbury. This Court concluded that the trial court's evidentiary decision was neither legally impermissible nor unreasonable and declined to reverse the decision. *Id.* at 5. This Court then reviewed the record and determined that there was "considerable evidence" to support the trial court's decision, a remand was necessary for the trial court to provide "articulation of detailed findings of fact and conclusions of law." *Id.* at 9.

## II. ON REMAND

On remand, an evidentiary hearing was scheduled, but due to a change in counsel for defendants and a scheduling conflict with their new counsel, the parties stipulated to and the trial court ordered an adjournment of the hearing until December 16, 2014. On December 5, 2014, the trial court held a "special motion hearing" during which it indicated that the parties would have 30 days to supplement their briefs/positions and another 30 days to respond to those submissions, after which it would "issue order clarifying reasons behind first order" and that no evidentiary hearing would be held. Plaintiff, defendants, and third-party defendants each submitted one brief within the initial 30 days and no one submitted a response.

On February 3, 2015, the trial court issued its decision which again rescinded the deed to the disputed 15 acres. The court set forth the following facts, as found by the court:

- that plaintiff claimed to have never intended to transfer the 15 acres and that she only executed a single deed with the sole intent of transferring her interest in "parcel 1850";

- that plaintiff's position was "bolstered" by the affirmance in the complaint of the witnesses to the original deed that they had only witnessed one deed;

- that no consideration had been exchanged for either of the two deeds John Bradbury claimed to have received (one for the 1800 parcel and one for the 1850 parcel) and that plaintiff had described her relationship with John as "estranged";

- that plaintiff received "a" quitclaim deed seeking release of her interest in the 5-acre 1850 parcel so that John Bradbury could obtain a mortgage; that upon receipt of "the deed," plaintiff contacted James Bradbury "to confirm that the deed was for the five-acre parcel"; that upon confirmation of that fact, plaintiff executed "the deed," and had "it" witnessed; and that plaintiff then forwarded "it" to a relative "as no notarization jurat was on *the* deed" (emphasis added);

- that before any deeds were recorded, John Bradbury wrote to plaintiff and "expressed an interest in purchasing the entirety of Plaintiff's property, at that time 24 acres, as she had already released and conveyed what she believed to be the five-acre parcel," but that no agreement was ever reached between the parties;

- that plaintiff became alerted to an issue in 2007 when she did not receive a summer tax bill, which led to her discovery of a deed having been recorded March 7, 2007 which bore her signature "some 16 months after Plaintiff had executed the same";

- that all future tax bills were then sent to plaintiff and that defendant made one tax payment on the 1800 parcel between 2005 and 2011;

- that plaintiff sold all 24 of her acres (parcels 1700 and 1800) by land contract to the third-party defendants, long-time lease holders who had farmed the property for over 20 years and from whom defendants never collected any rent; and

- that the title insurance for the sale between plaintiff and third-party defendants failed to disclose the contested 1850 deed even though it was recorded in the chain of title.

The trial court expressly found "that the signatures of record on all admitted exhibits of both the Plaintiff and Defendant are significantly similar." The trial court also found that: there was no consideration exchanged and that, with regard to the 1850 parcel, none was expected; plaintiff "acted in good faith, intending and believing she was transferring her interest in the five acres"; the signatures on the 1800 deed and 1850 deed were original signatures "not forgeries," and that all of John's signatures were original as well. The court noted, however, "that it was conceivable that the 'original deeds' legal description was substituted either intentionally or unintentionally, after the fact." The trial court rejected defendant's argument that plaintiff knew what she was signing due to her testimony that she contacted her father to confirm that the deed she was holding was for the 1850 parcel. The trial court then explained, "This then begs the question as to what legal description was attached to that deed?", but noted that the original deed that was recorded "had a three-line legal description" for the 1800 parcel.

The trial court concluded that there was clear and convincing evidence that plaintiff's intent was "never to convey parcel 1800 to the Defendant." It noted that she took steps to confirm "the deed (singular) she was signing from her brother was to parcel 1850," but that she "obviously" made a mistake despite confirming with James Bradbury regarding which property was being transferred, because the attached legal description for the property was for parcel 1800. It found that the lack of consideration was further indication of plaintiff's mistake and that John's expressing an interest in the property in 2006 belied that he had any property interest in 2005. The trial court noted that deeds could be set aside based on mistake of fact and again ordered rescission of the deed transferring the 1800 parcel to defendants.

## III. ANALYSIS

## A. PAROL EVIDENCE

On appeal, defendants first challenge the trial court's consideration of the July 2006 letter from John Bradbury to plaintiff in which John expressed an interest in purchasing the property. Defendants contend that the letter, as well as plaintiff's witnesses, constituted parol evidence that should not have been considered. We do not consider the merits of this argument because it has been waived.

Waiver is the intentional relinquishment of a known right. *Adair v State*, 497 Mich 89, 104; 860 NW2d 93 (2014). Defendants concede that they did not object to the admission of the July 2006 letter. However, defendants also did not raise this evidentiary issue in their first appeal. Their only evidentiary objection was to Teed's testimony on the grounds that it was inadmissible hearsay, which this Court rejected. Because defendants failed to raise the issue of the admission of the July 2006 letter in their original appeal to this Court, the issue was waived.

Defendants insist that this issue may still be considered because the case "is now in a procedurally different posture" because the post-remand evidentiary hearing for supplementation of the record was cancelled. We disagree. Determinations of the admissibility of evidence are necessarily made and reviewed based on the record and posture of the case *at the time of admission*. See, e.g., *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993). And defendants concede in their brief on appeal that the trial court properly admitted the evidence at the original hearing.

Certainly, there are times when decisions of this Court determine that evidence should, or should not, have been admitted which then become binding on the lower court pursuant to the law of the case. See *KBD & Assoc, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 679; 816 NW2d 464 (2012) ("The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue."). However, consideration of the law of the case doctrine in this case leads back to the issue of waiver. "Under the law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *Clark v State Farm Mut Auto Ins Co*, 590 F3d 1134 (CA 10, 2009) (internal quotation marks, citation, and alteration omitted).

## B. RESCISSION

Defendants next argue that the trial court's post-remand findings of fact were insufficient to uphold its decision to rescind the deed to the 1800 parcel. Again, we disagree. In reviewing equitable actions, this Court reviews de novo the decision itself and reviews for clear error the findings of fact made in support of the equitable decision. *Attorney General v Lake States Wood Preserving, Inc*, 199 Mich App 149, 155; 501 NW2d 213 (1993). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "Special deference is given to the trial court's findings when they are based on the credibility of the witnesses." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010).

As this Court noted in the prior appeal, fraud and mistake of fact are both grounds sufficient to justify rescinding and setting aside a conveyance. See *Mannausa v Mannausa*, 370 Mich 180, 184-185; 121 NW2d 423 (1963); *Bornegesser v Winfree*, 329 Mich 528, 533-534; 46 NW2d 366 (1951). The party seeking rescission must prove the fraud or mistake by clear and convincing evidence. *Miles v Shreve*, 179 Mich 671, 680; 146 NW 374 (1914). "Evidence may be uncontroverted, yet not be clear and convincing. . . . Conversely, evidence may be clear and convincing despite the fact that it has been contradicted." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (internal quotation marks and citation omitted).

### 1. FINDINGS OF FACT

Defendants argue that the trial court made multiple factual findings that were clearly erroneous given the record, but these arguments are really just assertions that their evidence was more credible, and the trial court erred by not accepting it. For example, defendants complain about the trial court's determination that defendants "made one tax payment on parcel 1800 from 2005 to the onset of this litigation in 2011." Defendants note that John Bradbury testified that he "paid the summer of '07, the winter of '07, and the summer of '08." However, plaintiff testified that she had paid all of the taxes on the property until September 2007 when she did not receive her tax bill, that she "believed," but was "not sure" if she had paid the bill that never got sent to her, and that she paid all of the 2008 taxes. As with most of the evidence in this case, this issue came down to whose testimony the trial court found credible, a matter we will not second-guess on appeal. See *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999) (instructing that "[q]uestions of credibility are left to the trier of fact and will not be resolved anew by this Court").

Similarly, defendants take issue with the trial court's determination that John Bradbury never received any rent from third-party defendants because John expressly testified that he once received a check from them for $500. However, Michael French testified that the $500 check was for a calf that was born to James Bradbury's cow after French sold it. Thus, the trial court's determination that defendants never received any rent was based on its determination that Michael French's testimony was more credible than John's.

The background section of the trial court's opinion is clear and based on the court having "found" these facts since much of it was disputed by defendants. There is no question that the

trial court believes that John Bradbury wrote the July 2006 letter. The trial court expressly found that plaintiff only signed one deed, that only one deed was sent to plaintiff and executed by her and that, whether intentionally or unintentionally, the legal description for the 1800 parcel was attached after the fact. Defendants challenge what they characterize as the trial court's "unsupported and inflammatory" determination that it was "conceivable" the legal description was later attached. However, as described by the trial court, this theory makes perfect sense of much of the evidence:

> A copy of the first page of the original deed would allow for the perfection of a two-deed scenario, thereby allowing for legal descriptions to be attached thereto as desired. A close review of the copied, "lost deed" for parcel 1850, clearly shows a space where the middle initial of the Plaintiff appeared on the original deed. This further suggests a copy of the original deed was made, arguably lost, and then a copy of the same recorded.

The trial court's determination that plaintiff only executed a single deed and that neither she nor John Bradbury believed that she had executed a deed to the 1800 parcel—based on John's subsequent offer to purchase the property—are supported by the record.

## 2. CONCLUSIONS OF LAW

The remaining question, then, is whether the trial court's conclusions of law, brief as they were, were sound. Defendants contend that because plaintiff's testimony was unequivocal that she only ever executed one deed, this Court had to disregard the trial court's findings and opinion on the issue of mistake. Indeed, defendants contend that "this Court must decline to even consider an argument that the second deed was the result of a unilateral or mutual mistake because it is unsupported by any of the evidence adduced at trial." As noted above, the trial court's facts are supported by the record and not clearly erroneous. What defendants fail to see is how they are consistent with mutual mistake.

A "mutual mistake of fact" is a legal term meaning "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006). The trial court found, consistent with plaintiff's testimony, that she only ever signed one deed. What the trial court could not determine, based on the evidence in the record, was "what legal description was attached to the deed." The trial court found that plaintiff consulted James Bradbury to confirm that the property description that was attached was for the five-acre parcel and, being reassured that it was, executed the deed with the intent to deed the five-acre parcel. From these facts, two possibilities arise.

The first possibility is that the property description attached to the deed was for the 14.9-acre 1800 parcel, in which case plaintiff signed the deed by mistake because she never intended to deed that property to John Bradbury, as evidenced by her having the property appraised for sale. Further, John's July 2006 letter to plaintiff seeking to purchase those 14.9 acres, in addition to some other land, evidenced that John also did not believe that plaintiff had deeded him the 1800 parcel. Under these circumstances, both John and plaintiff had a mutual mistake because they both believed that the deed plaintiff had executed was for the 1850 parcel when, in fact, it had the property description for the 1800 parcel attached.

The second possibility was that the property description attached to the deed executed by plaintiff was for the five-acre 1850 parcel, in which case there was no mistake by either party in the execution of the deed. However, if plaintiff ever only signed a single deed, and it had the correct five-acre 1850 parcel property description attached, from where did the second 1800 parcel deed come? The trial court determined that it was "conceivable" that the legal description from the single deed plaintiff executed was substituted, "intentionally or unintentionally," after the deed's execution. The trial court looked at the deeds and explained the evidence that supported this position. The trial court necessarily determined that it was unintentional by naming it a mistake (as opposed to fraud). The unintentional affixation of the wrong property description results, again, in a mutual mistake by the parties.

Thus, regardless of which legal description was attached to the deed at the time plaintiff executed it, the record supports the trial court's legal determination that there was mutual mistake involved in the creation of the deed transferring the 1800 parcel.[1]

## IV. CONCLUSION

In sum, the record supports the trial court's findings of fact, and its conclusions of law are consistent with Michigan law and its findings of fact.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Michael J. Kelly

---

[1] We have reviewed defendants' supplemental authority and find it inapplicable because the trial court in this case did not invalidate the deed simply because of an invalid notarial act. Furthermore, the holding on which defendants rely was premised with a condition not present in this case—that of an "otherwise valid" conveyance. *In re Duke Estate*, 312 Mich App 574, ___; ___ NW2d ___ (2015) (Docket No. 321234); slip op at 7.